**In the Matter of Robert Charles SHELTON, Edwin J. Gasaway, Trustee in Bankruptcy, Appellant,**

v.

**Raymond ERWIN, Appellee.**

**No. 72–1363.**

United States Circuit Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1973.

Decided Feb. 7, 1973.

Curtis L. Mann, St. Louis, Mo., for appellant.

V. Jack Muehlenkamp, Dellwood, Mo., for appellee.

Before LAY, HEANEY, and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The question before us in this case is whether a security interest on an automobile was established pursuant to V.A.M.S. § 400.9–203(1)(b) (Uniform Commercial Code § 9–203(1)(b)).*

On August 12, 1970 the bankrupt, Robert Charles Shelton, purchased a 1969 Pontiac from appellee, Raymond Erwin. On that date bankrupt and Erwin executed a bill of sale on the billing stationery of "Ray Erwin Welder Sales." This voucher describes the automobile,

sets out the terms of payment and provides that bankrupt shall insure the automobile until he has paid for it in full. Also on August 12, 1970, bankrupt filed an application for Missouri Title showing Erwin as the holder of the first lien and bankrupt as owner. On September 1, 1970 the State of Missouri issued a Certificate of Title showing bankrupt to be the owner of the Pontiac and Erwin the holder of the first lien.

■ Subsequent to Shelton's bankruptcy, March 12, 1971, the Trustee in Bankruptcy filed turnover petitions against bankrupt and Erwin seeking title and possession of the automobile. The Referee in Bankruptcy found that V.A. M.S. § 400.9–203(1)(b) had not been complied with and sustained the Trustee's petition to turn over the automobile. The district court, Judge Meredith presiding, reversed the decision of the Referee, holding that the bill of sale satisfied the modest requirements of a written security agreement under the Uniform Commercial Code. In re Shelton, 343 F.Supp. 43 (E.D.Mo.1972). Although we agree with the district court that the parties clearly intended to create a security interest in favor of Erwin, we hold that bankrupt and Erwin did not satisfy the requirements of V.A.M.S. § 400.9–203(1)(b). Therefore, we reverse.

■ Appellee Erwin contends that either the bill of sale or the title application or both taken together satisfy the minimal requirements of V.A.M.S. § 400.9–203(1)(b).[1] The necessary requirements of Section 400.9–203(1)(b) are (1) debtor's signature (2) a "security agreement" and (3) description of the collateral. It is number (2)—the security agreement requirement which

* V.A.M.S. is Vernon's Annotated Missouri Statutes. Missouri adopted the Uniform Commercial Code effective July 1, 1965. The section numbers of the V.A.M.S. correspond to the section numbers of the Uniform Commercial Code but with the chapter number "400" added, so that section 1–101 of the U.C.C. is section 400.1–101 of V.A.M.S., et cetera.

1. (1) . . ., a security interest is not enforceable against the debtor or third parties unless
(a) the collateral is in the possession of the secured party; or
(b) the debtor has signed a security agreement which contains a description of the collateral . . . .

is fatal to appellee. We must look to the Uniform Commercial Code (hereinafter Code) to determine its meaning. In the Code, § 1–201(3) we find that "agreement" means "the bargain of the parties in fact as found in their language." § 9–105(1)(h) defines "security agreement" as "an agreement which creates or provides a security interest." Although no precise words are required in the Code, the definitions given indicate that there must be some language in the agreement actually conveying a security interest. We fail to find such language in the bill of sale or the title application before us. The notation on the title application that a lien in Erwin's favor existed is not sufficient. In re Reese, Willier and Hart, U.C.C. Reporter Digest, Section 9–203, A 2 (Matthew Bender & Co.). The Referee found that the title application and subsequent Certificate of Title showing Erwin as lienholder were at best *financing statements*. We agree, as appellee contends, that these were sufficient to perfect a security interest, if one existed, pursuant to the requirements of V.A. M.S. § 301.600 (requirement of perfection of liens on automobiles). In re Jackson, 268 F.Supp. 434 (E.D.Mo.1967). But no interest existed to be perfected. Although a financing statement conceivably could create a security interest they usually do not contain the necessary grant of an interest section 9–203(1)(b) requires. Mid-Eastern Electronics, Inc. v. First Nat. Bank of Southern Maryland, 380 F.2d 355, 356 (CA4 1967); In re Mann, 318 F.Supp. 32, 35 (W.D. Va.1970); American Card Co. v. H. M. H. Co., 97 R.I. 59, 196 A.2d 150 (1963). The financing statement is merely evidence of the creation of a security interest, not the agreement itself. In re Mann, *supra*; Rutkin Electric Supply Co. v. Burdette Electric, Inc., 98 N.J. Super. 378, 237 A.2d 500 (1967); Central Arkansas Milk Producers Ass'n v.

Arnold, 239 Ark. 799, 394 S.W.2d 126, 128 (1965). Nor does a promissory note create a security interest. Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, 176 N.W.2d 166 (Iowa 1970); *Central Arkansas Milk Producers Ass'n, supra*.

■ Since the Code is not ambiguous on the requirements of the creation of an enforceable security interest, there is no reason to relax those requirements. Although the Code should be liberally construed, U.C.C. § 1–102(1), the doctrine of equitable mortgages is no longer necessary or useful in a commercial transaction since article nine reduces formal requisites to a minimum. U.C.C. § 9–203, comment 5.

Viewed in terms of equitable principles, the result reached may seem harsh at first glance. We are satisfied that the parties (Shelton and Erwin) intended, indeed even attempted, to create a security interest in favor of Erwin. However, as the First Circuit Court of Appeals aptly observed in a case involving a similar issue,

". . . the result is commanded not by fireside equities but by the necessary technicalities inherent in any law governing commercial transactions. . . . [To] the extent that the legal significance of documents may be varied and enlarged by other documents evidencing an understanding of the immediate parties to a transaction, we suspect that the law of commercial transactions will not achieve [its] stated purposes. The basis of the trouble here is that appellee used an inappropriate form to do what it apparently wished." Safe Deposit Bank and Trust Co. v. Berman, 393 F.2d 401, 402, 404 (CA1 1968).

The decision of the district court is reversed and the decision of the Referee in Bankruptcy is hereby reinstated.