Jim GIBBS *v.* Vernie KING

77-319                                               564 S.W. 2d 515

Opinion delivered April 24, 1978
(Division II)

*Keith G. Rhodes* and *Marvin H. Robertson,* for appellant.

*Owens & Fikes,* for appellee.

GEORGE HOWARD, JR., Justice. We are to decide whether the holding of the trial court, sitting without a jury, that the possession of a Caterpillar D8 tractor, hereinafter referred to as tractor, by appellee is held pursuant to a pledge, as claimed by appellee, rather than pursuant to a sale, as asserted by appellant, is supported by substantial evidence.

## THE FACTS

Sometime during the early part of 1973, appellant, Jim Gibbs, acquired a truck from International Harvester Company of Pine Bluff, Arkansas, hereinafter referred to as International, where appellee, Vernie King, is employed as a salesman. Appellant immediately discovered that the truck needed necessary repairs — the replacement of a defective clutch and the repair of the truck's brakes — in order to make the truck operative upon the highways. Consequently, the truck was returned to International by appellant.

340

Approximately one month after the truck had been returned to International, appellant was advised that the truck had been repaired and appellant was presented "a pretty big bill." Appellant decided that he did not want the truck, but appellee persuaded appellant to accept the truck and, as a further inducement to get appellant to keep the truck, appellee loaned appellant $1,250.00 to be applied to the repair bill.

Appellee prepared a financing statement, which was signed by appellant, that identifies appellant as debtor, appellee as the secured party and identifies the property covered as the tractor in question, serial number 8D81776 with the figure "$1,248.05" written on the face of the document. This document was filed with the Circuit Clerk of Jefferson County on March 12, 1973. However, the record does not reflect that a security agreement was ever entered nor was possession of the tractor delivered to appellee at the time the financing statement was executed and filed.

On September 13, 1974, appellee went to appellant's home at Cabot, Arkansas, and took possession of the tractor. However, before taking possession, a written instrument which is a printed retail order containing blank spaces and used by International in connection with the sale of used vehicles, was executed by both appellant and appellee after certain blank spaces had been filled in by appellee. This written document designates appellant as seller and appellee as purchaser of "1 D8 Cat., serial No. 8D81776" and "1 Set of Rails and Rollers" for a "cash price of $5,000.00" and a down payment of "$1,248.05" with an "unpaid cash price of $4,752.05." The written document further provides that the unpaid balance shall be paid in "12 installments of $396.00 each." The document further specifies that "This vehicle is sold 'As Is' with no warranty as to mechanical condition unless otherwise endorsed by seller on the reverse side."

Appellee returned to Star City, Arkansas, with the tractor, but was unable to get it in running condition and discovered that the rollers did not fit the tractor. Moreover, appellee testified, without objection on the part of appellant, that although the written document does not reflect it, there was an understanding between appellant and appellee to the

effect that if appellee was successful in making money with the tractor, then and only then, would appellee be obligated to pay for the tractor as evidenced by the written document of September 13, 1974. Appellant emphatically denied that such a condition or understanding existed between the parties.

On September 7, 1977, appellant instituted action in the Circuit Court of Jefferson County seeking judgment against appellee for the unpaid balance due on the tractor.

## HOLDING OF THE COURT

"The Court finds in this case that the subject of this lawsuit, this Caterpillar D8 Tractor, was never anything more than a pledge for the indebtedness of Mr. Gibbs to Mr. King in the amount of One Thousand Two Hundred and Forty-eight and 05/100 ($1,248.05) Dollars."

As a consequence of this holding, appellant-plaintiff's complaint was dismissed.

## THE DECISION

Inasmuch as the trial court in holding that the tractor was simply a pledge for the indebtedness owed to appellee placed "considerable weight on the exhibit of the defendant (appellee), which is a financing statement filed March 12, 1973, the date that the Court finds the money was loaned to Mr. Gibbs by Mr. King," we deem it advisable from the outset, to discuss the significance and the relevancy of the financing statement as it relates to the issue in this lawsuit.

Under Ark. Stat. Ann. § 85-9-402 (Add. 1961), it is provided in relevant part as follows:

". . . [A] financing statement may be filed before a security agreement is made or a security interest otherwise attaches . . . "

In *General Electric Credit Corp.* v. *Bankers Commercial Corp., et al*, 244 Ark. 984, 429 S.W. 2d 60 (1968), we said:

". . . A financing statement, standing alone, does not create a security interest in the debtor's property. It merely serves notice that the named creditor may have a security interest."

Inasmuch as this record is void of any security agreement executed by appellant granting a security interest in the tractor to appellee and the evidence further reflects that appellee did not take possession of the tractor when the financing statement was executed, appellee had no valid security interest in the tractor even though the financing statement was filed for record in the office of the Circuit Clerk of Jefferson County, Arkansas.[1]

Appellee argues that when he took possession of the tractor on September 12, 1974, some twenty months after the execution and filing of the financing statement, he received the tractor as a pledge to secure the indebtedness owed by appellant to appellee. This argument is neither persuasive nor convincing inasmuch as if we accepted this argument, we would be required to close our eyes completely to the existence of a written agreement prepared by appellee which clearly and conclusively shows that the tractor was delivered to appellee on September 12, 1974, in connection with a sale and purchase agreement made between appellant and appellee. The document sets forth in detail the contract price, designates appellant's indebtedness owed to appellee as a down payment and the unpaid balance is to be paid out in 12 monthly installments of $396.00 each.[2] These facts do not support a pledge.

Appellee has also asserted rather vigorously that we should not consider or accept the plain meaning of the

---

[1]Under Ark. Stat. Ann. § 85-9-203 (Add. 1961, it is provided in material part as follows:

". . . [A] security interest is not enforceable against a debtor or third parties unless

(a) the collateral is in the possession of the secured party;. or
(b) the debtor has signed a security agreement which contains a description of the collateral."

[2]*See: Foster* v. *Universal C.I.T. Corp.,* 231 Ark. 230, 330 S.W. 2d 288 (1959) where we said a contract must be strictly construed against the party preparing it.

written document of September 12, 1974, but should accept the testimony of the appellee that there was a condition precedent imposed by the parties orally before the written agreement would become binding on appellee to pay for the tractor; and that we should recognize that many agreements are drawn up by unskilled persons ignorant of the legal rules of construction and as a consequence, many agreements, including the one prepared by appellee, do not embody the entire agreement or express the agreement vaguely and ambiguously. But it must be remembered that appellee was engaged in the business of selling vehicles and frankly stated that he was quite familiar with sales contracts and sales agreements having filled out forms involving sales of vehicles, similar to the one involved in this case, regularly as part of his task as a salesman for International. We are not persuaded that appellee was ignorant of the legal obligations and consequences flowing from the terms of the contract that he prepared and executed. Moreover, on the face of the printed form supplied by appellee appears in large bold print "This Vehicle Is Sold 'As Is'." Indeed, appellee, who had been employed as a salesman for three years, knew the meaning and significance of this term in commercial transactions.

After carefully reviewing all of the evidence in this case and giving every reasonable inference derived therefrom in the light most favorable to appellee, we conclude that the trial court's holding is not supported by substantial evidence, and consequently, we reverse and remand this case.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.