**In re Arthur Emanuel CAMBRIDGE and Donna Jean Cambridge, Debtors.**

**Arthur Emanuel CAMBRIDGE and Donna Jean Cambridge, Plaintiffs,**

**v.**

**John STUBBS and Don Sisco, Defendants.**

Bankruptcy No. 82–00817–SW–S.
Adv. No. 83–0714–S.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Nov. 1, 1983.

James R. Doran, Springfield, Mo., for plaintiffs.

Loyd Francis, Kimberling City, Mo., for defendants.

MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtors filed their Complaint to Determine Validity of Lien in certain equipment purchased from creditors, John Stubbs and Don Sisco, the defendants in this adversary proceeding.

The parties submitted their Stipulation of Facts. The facts reveal that defendants claim a security interest in equipment of Spring's Fried Chicken amounting to about $7,000 resulting from the sale of defendants' business to debtors in May 1980. The sale price was to be $17,000 with a deferred balance of $13,000 to be carried by defendants.

A Bill of Sale dated May 23, 1980 which listed the equipment (Exhibit "A") was entered into by the parties and delivered at the consummation of the transaction along with a "Contract For The Sale of Real Estate". A Financing Statement (Exhibit "B") was entered into between the parties and filed with the Recorder of Deeds of Stone County, Missouri on July 8, 1980. No financing statement was filed with the office of Missouri's Secretary of State, nor was any Security Agreement entered into between the parties.

After reviewing the stipulation filed by the parties, this Court ordered that briefs be submitted regarding the issue of whether the alleged secured parties were required to file a financing statement with the Secretary of State in order to perfect. Briefs have been filed.

This Court is bound by decisions of the courts of Missouri as to the meaning of state law. *Harkins v. Wyrick,* 589 F.2d 387, 391 (8th Cir.1979); *United States v. City of St. Louis, et al.,* 597 F.2d 121, 124 (8th Cir.1979).

Debtors assert that under the Uniform Commercial Code as adopted in Missouri, a security interest in goods which are or will become fixtures may be perfected by recording in the office where the mortgage on the real estate concerned would be recorded. In all other cases, such filing must be made in the office of the Secretary of State in addition to applicable offices of the Recorder of Deeds in local counties. Sections 400.9–401 and 400.9–408 V.A.M.S. Debtors claim that because of the nature of the equipment—movable kitchen utensils and restaurant accessories, no security interest was perfected because filing was made only in a manner which would have perfected a security interest in fixtures.

In addition, debtors argue that the UCC Form 1 Financing Statement which was filed by defendants is not adequate as a security agreement under Missouri law, citing *Starman v. Wolfe, Inc.,* 490 S.W.2d 377 (Mo.App.1973) and *American Card Co. v. H.M.H. Co.,* 97 R.I. 59, 196 A.2d 150 (1963).

Defendants assert that the property in question is not being claimed by the Trustee in Bankruptcy for the benefit of creditors, but instead is being claimed by debtors as exempt property. Defendants argue that debtors are not innocent third parties to this transaction and did in fact have notice that a security interest in the subject property was intended.

Defendants further argue that Missouri law allows the Court to look at the totality of the documents, including the Contract, Bill of Sale and signed Financing Statement which was filed to determine whether the UCC requirements necessary for a valid security interest to be perfected were satisfied. Section 400.9–203 V.A.M.S. Comment, Paragraph 4.

Section 400.9–203(1)(b) V.A.M.S. provides that a security interest is not enforceable against the debtor or third parties unless the necessary requirements of (1) a debtor's signature (2) a "security agreement" and (3) a description of the collateral are satisfied. *Shelton v. Erwin,* 472 F.2d 1118, 1119, (8th Cir.1973).

A financing statement is merely evidence of creation of a security interest and usually is not itself a security agreement. *Shelton,* supra at 1120. Under Section 400.-9–402 V.A.M.S., a security agreement may serve as a financing statement if it is signed by both parties. "The question arises whether the converse is true: Can a signed financing statement operate as a security agreement?" *Matter of Bollinger Corp.,* 614 F.2d 924, 926 (3rd Cir.1980). The *Bollinger* court noted that the earliest case to consider this question was *American Card Co. v. H.M.H. Co.,* 97 R.I. 59, 196 A.2d 150, 152 (1963) which held that a financing statement could not operate as a security agreement because there was no language granting a security interest to a. creditor. The court in *American Card* believed that implicit in the definition of "security agreement" under Section 9–105(1)(h) was this requirement; some grant language necessary to "create or provide security". *Bollinger,* supra at 926.

In two 1973 decisions decided within 30 days of each other, both a Missouri Court of Appeals and the Eighth Circuit Court of Appeals followed and cited the *American Card* rationale. In *Starman v. John Wolfe, Inc.,* 490 S.W.2d 377, 383 (Mo.App.1973) the court flatly stated, "The financing statement does not qualify as a security agreement". The Eighth Circuit Court was even more adamant in dismissing a "totality of documents" theory similar to the one asserted by defendants in the present case. *Shelton,* supra at 1119–20. The court observed:

"Although no precise words are required in the Code, the definitions given indicate that there must be some language in the agreement *actually conveying a security interest.* We fail to find such language in the bill of sale or the title application before us. The notation on the title ap-

plication that a lien in Erwin's favor existed is not sufficient". *Shelton,* supra at 1120 [emphasis added].

In the present case, the parties have stipulated that no Security Agreement was entered into between debtors and defendants. A close examination of the documents also reveals no language conveying a security interest to the defendants.

Defendants assert that it "seems obvious" that both parties *intended* that defendants have a security interest in the subject property and that the Realtor *attempted* to so provide. Defendants argue that it would be "grossly inequitable" to permit debtors to capitalize on the negligence or omissions of the Realtor "even though both of the parties intended otherwise". The *Shelton* court dealt with similar arguments and stated:

> "Viewed in terms of equitable principles, the result reached may seem harsh at first glance. We are satisfied that the parties (Shelton and Erwin) *intended, indeed even attempted,* to create a security interest in favor of Erwin. However, as the First Circuit Court of Appeals aptly observed in a case involving a similar issue,
>
> '... the result is commanded not by fireside equities but by the necessary technicalities inherent in any law governing commercial transactions ... [T]o the extent that the legal significance of documents may be varied and enlarged by other documents evidencing an understanding of the immediate parties to a transaction, we suspect that the law of commercial transactions will not achieve [its] stated purposes. The basis of the trouble here is that appellee used an inappropriate form to do what it apparently wished' ".

*Shelton,* supra at 1120 (quoting in part), *Safe Deposit Bank and Trust Co. v. Berman,* 393 F.2d 401, 402, 404 (1st Cir.1968) (emphasis added).

Although it is clear that other jurisdictions have taken a much more liberal stance with respect to the security agreement requirements as already discussed, see *In re*

*Amex Protein Development Corp.,* 504 F.2d 1056 (9th Cir.1974) (financing statement signed by the debtor satisfies the requirement of a security agreement); *In re Bollinger,* supra, and *In re Numeric Corp.,* 485 F.2d 1328 (1st Cir.1973) (security agreement requirement can be satisfied by also considering the financing statement and other documents relating to the debt), it is also clear that no such trend has been established in Missouri or the Eight Circuit. See, *Pontchartrain State Bank v. Poulson,* 684 F.2d 704, 706 (10th Cir.1982) (discussion of split among the courts and holding that when no language creating a security interest was present, there was no security agreement).

■ The security interest claimed by the defendants in the personal property described in Exhibit "A" was not properly evidenced by the documents executed. It is not sufficient that the parties agreed that there was to be a security interest. Unlike the provision of the Uniform Commercial Code which creates a good faith effectiveness against persons with knowledge when there is a failure to file property, Section 400.9–401(2), R.S.Mo.1969, Section 400.9–203(1)(b), R.S.Mo.1969, requires a writing which can be signed. It is, notes the comment, a requirement "in the nature of a statute of frauds". In view of this holding the parties' contention regarding the need to file with the Office of the Secretary of State has been rendered moot and need not be addressed. The defendants are to be classified as unsecured creditors.

SO ORDERED this 1st day of November, 1983.