**In re CAMPBELL SIXTY SIX EXPRESS, INC., Debtor.**

**CAMPBELL SIXTY SIX EXPRESS, INC., Movant,**

**v.**

**GREAT SOUTHERN SAVINGS & LOAN ASSOCIATION, Respondent.**

**Bankruptcy No. 86–01697–S–1–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

May 20, 1987.

**602**

Gary A. Love, Springfield, Mo., for Great Southern Sav. & Loan Assn.

Kerry L. Myers, Thomas J. Carlson, Springfield, Mo., for debtor.

James C. Mordy, Kansas City, Mo., for Walkers.

James E. Bird, Kansas City, Mo., for Creditor's Committee.

## ORDER DETERMINING SECURED STATUS IN COMPUTER EQUIPMENT

KAREN M. SEE, Bankruptcy Judge.

Debtor filed a motion pursuant to 11 U.S.C. § 506 for a determination whether Great Southern Savings & Loan Association has a valid, perfected security interest in debtor's computer equipment. Debtor's motion was accompanied by a memorandum in support plus interrogatories and requests for production of documents directed to Great Southern. Great Southern did not file a response to debtor's requests for production of documents but instead produced certain documents in its response to the interrogatories, as discussed below.

This matter was heard September 17, 1986. Debtor appeared by its president, Bill Pitt, and attorney Kerry Myers; Great Southern appeared by vice-presidents Harry Sorg and Don Gibson and attorney Gary Love; Randall and Trula Ann Walker appeared only by attorney James Mordy; and the creditors' committee appeared by attorney James Bird. The Walkers are guarantors of the Great Southern debt and, as such, are interested parties who appeared by counsel and participated fully in the hearing.

### ISSUE

Great Southern contends it has a security interest in all of debtor's computer equipment. The main issue at the hearing was whether the security agreement between debtor and Great Southern described the collateral as required by §§ 400.9–203 and 400.9–110 R.S.Mo., and if so, exactly what collateral was covered by the agreement.

### FACTS

Prior to July 1984, debtor purchased computer equipment from Burroughs Company. Debtor also owned other computer equipment. Burroughs financed the purchase and took a purchase money security interest in the Burroughs equipment.

In July 1984, Bill Pitt, Chief Executive Officer of Campbell Sixty Six, talked to Don Gibson, Great Southern vice-president, about refinancing the Burroughs computer loan to reduce the interest rate. Messrs. Pitt and Gibson negotiated an $875,820.50 loan from Great Southern to Campbell with interest keyed to the daily prime rate. On July 31, 1984 Mr. Pitt, on behalf of Campbell, executed a promissory note to Great Southern, payable in 36 monthly installments. He also executed a four-page security agreement which was supplied by Great Southern. See Debtor's Exhibits 1 and 2. Paragraph D(1) of the security agreement states, in pertinent part, that "the security agreement is granted in the following collateral: See attached exhibit A." It was undisputed at trial that no document denominated "exhibit A" ever existed.

UCC financing statements (UCC–1's), with Campbell as debtor and Great South-

ern as secured party, were duly filed with the Greene County Recorder of Deeds and Missouri Secretary of State. Mr. Pitt signed the UCC–1's as president of Campbell (although his title was actually chief executive officer). Both UCC–1's described the collateral as: "All computers or computer equipment now owned or hereafter acquired."

The four-page security agreement did not describe the collateral in which the security interest was allegedly taken, but rather, referred to "exhibit A" for the list of collateral. No "exhibit A" or other document was ever attached to the security agreement to serve as the description of collateral. Although a document which Great Southern contends is "exhibit A" was found near the security agreement on the day before trial, as will be explained below there is not sufficient proof to show when or how it was placed with the security agreement or that it was intended by the parties to be the elusive "exhibit A."

Mr. Pitt said "exhibit A" was supposed to be a collection of the purchase invoices for the original Burroughs computer equipment. He further testified it was his intention and understanding that Great Southern was to be granted a security interest in only the equipment Burroughs Company previously had a security interest in, as shown on debtor's Exhibits 4 and 5. Concerning the after-acquired property clause in paragraph (D)(1)(e) of the security agreement, Mr. Pitt testified that it was his intent and understanding that Great Southern would have a security interest in any subsequent computer equipment purchased as a replacement for the original Burroughs computer equipment. The Court finds Mr. Pitt's testimony to be credible.

The Court takes notice of Great Southern's interrogatory answers. Interrogatory No. 4 requested identification of each document or attachment which Great Southern claims gives rise to a security interest in computer equipment. Interrogatory No. 5 requested the list of computer items and equipment in which Great Southern claims a security interest. Great Southern's answers to both interrogatories

referred the debtor to documents attached to the interrogatory answers. Those documents attached to Great Southern's interrogatory answers referred only to the Burroughs equipment and were identical to debtor's trial Exhibits 4 and 5 which debtor contended described the collateral in the missing "exhibit A" to the security agreement. Thus, as indicated in interrogatory answers and documents provided in connection with the answers, debtor assumed until the time of trial that Great Southern contended, as did debtor, that only the Burroughs computer equipment was intended to be collateral for the loan.

However, at trial Great Southern contended the parties intended creation of a security interest in all computer equipment, not just Burroughs equipment. This contention was supported by a document from Great Southern's files, offered as Great Southern's Exhibit 2 and purporting to be a list of all computer equipment, to be described further below. Mr. Gibson of Great Southern, who negotiated the loan transaction with Mr. Pitt, testified that no document labelled "exhibit A" ever existed and that no documents whatsoever were ever physically attached to the security agreement. He testified that Great Southern provided the security agreement in this case and that it was his recollection that Great Southern intended to take a security interest in all computer equipment then owned or thereafter acquired by Campbell. However, he admitted that if Great Southern had intended to take a security interest in all computer equipment then owned or thereafter acquired, it would have been much simpler to use the same language used in the UCC–1s and type "all computer equipment now owned or hereafter acquired" on the security agreement rather than referring to another document—"exhibit A".

Mr. Gibson testified that Great Southern maintains a dual file system utilizing an original file and a working file. The original loan file is kept in a secure place and is never used for daily reference by any employee. The original loan documents are supposed to be kept together in a plastic envelope in the original loan file. Mr. Gib-

son testified that the working file, supposedly identical to the original file, is available to Great Southern employees for use on a day-to-day basis.

Consistent with the practice of using the working file for day-to-day work, in answering the interrogatories, Mr. Gibson used the working file. The documents which Great Southern attached to its interrogatory answers were photocopies of the working file. Only the Burroughs documents, identical to debtor's Exhibits 4 and 5, were contained in the working file. The working file did not contain a copy of the list of the additional equipment which Great Southern attempted to introduce as its Exhibit 2. On the afternoon before trial, to prepare for the hearing Mr. Gibson went to the original file for the first time. He discovered Great Southern Exhibit 2, which was not contained in the working file. Mr. Gibson further testified that he met with debtor's counsel late in the afternoon the day before trial and showed Great Southern Exhibit 2 to debtor's counsel at that time.

Harry Sorg, another Great Southern vice-president, also testified about Great Southern's procedures and Exhibit 2. He testified that because of pending litigation and requests for copies of the loan documents in Great Southern's files, the working file and original loan file had probably been commingled. With admirable candor, Mr. Sorg admitted that no one could be certain what documents belonged in each of the files. Mr. Sorg also testified that he did not provide a copy of Great Southern Exhibit 2 to debtor's counsel following his deposition which occurred a few weeks earlier. At that deposition debtor's counsel had requested and Mr. Sorg had agreed to provide additional documents.

The Court finds from the testimony of Mr. Gibson and Mr. Sorg that until the day before trial neither realized that the list of equipment which is Great Southern's Exhibit 2 was in either the original or working file and neither can state with certainty whether it was intended to be "exhibit A," whether it was intentionally stored with the security agreement (and when), or whether it simply ended up in the original file after commingling of the contents of the two files.

Debtor objected to admission of Great Southern Exhibit 2 because it had not been produced when answering debtor's interrogatory Nos. 4 and 5, which specifically asked Great Southern to identify the document. For the same reason debtor also objected to taking any testimony from Mr. Gibson and Mr. Sorg concerning Great Southern's Exhibit 2. The Court took the objection under advisement and allowed Mr. Gibson and Mr. Sorg to testify concerning Exhibit 2 as an offer of proof.

## CONCLUSIONS OF LAW

As a preliminary matter, the Court addresses the contention of Great Southern and the Walkers, raised for the first time in post-trial briefs that this matter should have been brought as an adversary action and not a motion. Since respondents waited until post-trial briefing to raise this issue, after appearing and defending at hearing, they have waived all objections they might have had concerning whether this dispute should be before the Court by motion or adversary proceeding.

As to the main issue of whether the security agreement sufficiently describes the collateral as required by §§ 400.9–203 and 400.9–110 R.S.Mo., the Court notes that § 400.9–203 specifically states that a security agreement must contain a description of the collateral in which a security interest is taken. In the absence of a description of the collateral, no security interest is created and the security agreement is unenforceable. *In re Delta Molded Products, Inc.*, 416 F.Supp. 938, 942 (N.D.Ala. 1976) *affirmed*, 571 F.2d 957 (5th Cir.1978).

If the security agreement itself is fatally defective in this case, the Court cannot rely solely on the UCC–1 to supply the collateral description. The financing statement does not suffice as a security agreement because it lacks language granting a security interest in debtor's computer equipment to Great Southern. *In re Cambridge*, 34 B.R. 88, 90 (Bankr.W.D.Mo.1983).

■ Moreover, a broader description of collateral in a financing statement is ineffective to extend a security interest beyond that stated in the security agreement. When the collateral description in the security agreement and the UCC–1 differ, the secured party's rights to collateral are measured by the narrower of the two descriptions. *Matter of Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592, 594 (7th Cir.1986). Therefore, since the UCC–1 described any and all computer equipment of debtor, the extent of Great Southern's security interest is controlled by the collateral description in the security agreement which refers to "exhibit A." Furthermore, intent as reflected in the documents must be considered. As Mr. Gibson testified, if Great Southern had intended to take an interest in all computer equipment, it would have been both logical and simple to insert the general description as stated in the UCC–1 into the security agreement rather than referring to "attached exhibit A."

■ Turning attention back to the security agreement, under Missouri law, a description of collateral is sufficient if it reasonably identifies what is described. Section 400.9–110 R.S.Mo.; *In the Matter of Johnson*, 21 B.R. 484 (Bankr.W.D.Mo. 1982). The question of sufficiency of a description of collateral is for the Court to determine. Several courts have held that references to nonexistent attachments or listings of collateral will invalidate a security agreement. *In re Gist*, 25 B.R. 96, 97–8, (Bankr.S.C.1982); *J.K. Gill Co. v. Fireside Realty*, 262 Or. 486, 499 P.2d 813 (1972); *Rusch Factors, Inc. v. Passport Fashion Ltd.*, 67 Misc.2d 3, 322 N.Y.S.2d 765 (1971); *In re E.F. Anderson & Son, Inc.*, 12 U.C. C.Rep. 567, 570–71 (Bankr.M.D.Ga.1973); *DuBay v. Williams*, 417 F.2d 1277, 1284 (9th Cir.1969); *In re Shoreline Electric Supply, Inc.*, 18 U.C.C.Rep. 231, 234–35 (D.Conn.1975).

For example, in *Gill*, 499 P.2d at 813, the description of collateral in the security agreement stated, "Furniture as per attached listing." No listing was ever attached to the security agreement although the creditor testified at trial that a number of loose invoices should have been attached as the list. There was conflicting evidence concerning which invoices were supposed to have constituted the list. The Oregon Supreme Court found the security agreement unenforceable as a matter of law. The court held that a security agreement describing the collateral as "Furniture as per attached listing" but with no listing attached does not comply with §§ 9–203 and 9–110 of the Uniform Commercial Code. 499 P.2d at 814–15. The *Gill* decision has been favorably cited in Missouri. *See, First National Bank of St. Charles v. Chemical Products, Inc.*, 637 S.W.2d 373 (Mo.App.1982).

Other cases such as *In re Cawthorn*, 1 B.R. 267, 272–73 (Bankr.W.D.Va.1979), hold that a security agreement is sufficient if it references invoices not affixed to the security agreement but the invoices "are available and the items contained thereon are ascertainable." But such is not the case here. In *Cawthorn*, actual numbered invoices were referred to in the security agreement, but not attached. The only reference in the present security agreement is to an "exhibit A" which was never attached. Great Southern admits there never has been any document marked "exhibit A" and the parties are in sharp dispute as to what was intended to be "exhibit A". Debtor contends the intended exhibit was a list of Burroughs equipment. Great Southern rejects the Burroughs list and contends the intended exhibit was a list of all computer equipment.

The dispute over which document, if any, was intended to be "exhibit A" shows not only a failure to identify collateral in conformance with §§ 400.9–203 and 400.9–110 R.S.Mo, it also shows there was no meeting of the minds as to what the parties intended. Although the court may supply reasonable missing terms in a contract, the court cannot make a contract where none exists. In the present case the dispute is as to a fundamental term which cannot be the subject of the Court's speculation disguised as "construction" or "interpretation." There is no enforceable security agreement in this instance.

The Court finds Great Southern is a large, sophisticated lending organization and well aware of the importance of proper documentation. However, Great Southern's own vice-president, Mr. Sorg, testified that the working file and original loan file have been commingled and that he did not know which list belonged where. Thus, Great Southern is not even sure which list, if either, should be "exhibit A" because of the commingling of the original and working files in its exclusive possession. It is not sufficient that the parties may have intended or even attempted to create a security interest in favor of Great Southern. *In re Cambridge*, 34 B.R. at 90. Such intent does not excuse compliance with the Uniform Commercial Code.

The Court further concludes that Great Southern cannot claim any reliance on its Exhibit 2 list of computer equipment which it claims constitutes "exhibit A" to the security agreement. By its interrogatory answers Great Southern indicated it had a security interest in the Burroughs equipment. The day before trial, Great Southern found the Exhibit 2 list and took the position at trial that it had a security interest in all computer equipment. Since Great Southern's story changed within 24 hours of trial concerning what collateral secured its loan, and neither of its witnesses had convincing testimony to show he knew what was intended, Great Southern cannot argue that it ever relied on any particular list of collateral.

Finally, the court notes that the clause in the security agreement referring to the phantom "exhibit A," and the failure to see that the documents were in order with "exhibit A" properly attached must be construed against Great Southern, the party which supplied the agreement and which had possession and control of both the original and working files at all times. The rule of strict construction, *contra proferentem*, requires that a contract be construed against the party preparing the terms. *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U.S. 167, 174, 44 S.Ct. 90, 91, 68 L.Ed. 235 (1923); *Matter of City Stores Co.*, 9 B.R. 717,720[2] (Bankr.S.D.N.Y.1981).

Based on the foregoing facts and authorities, the Court finds that no "exhibit A" exists as described in the security agreement drafted by Great Southern. The Court further finds that neither Great Southern nor the Walkers have demonstrated with any certainty the existence of any document, located in either the original or working file (or anywhere else) which was intended by the parties to be the list of collateral in the nonexistent "exhibit A", and which was relied upon by Great Southern as the list of collateral. The evidence shows there was no meeting of the minds as to what was to what the parties intended to be the list of collateral for the loan. Accordingly, the court is compelled to find that Great Southern has no security interest in any of the debtor's computer equipment.

■ Finally, in regard to admission of Great Southern's Exhibit 2, debtor's objection is overruled and Great Southern's Exhibit 2 is admitted into evidence. The Court finds that under the circumstances omission of the document from the interrogatory answers was inadvertent. Omission of the document resulted from Great Southern's lack of knowledge of and reliance on its own files and its carelessness in handling the files, which the Court has determined was excusable neglect. The Court notes in the spirit of "better late than never," Mr. Gibson at Great Southern notified debtor's attorneys of the existence of the document after it surfaced the day before trial.

However, as explained at great length above, even though Exhibit 2 has been admitted, it does not alter the outcome in this proceeding. The document is not labeled "exhibit A" as referred to in the security agreement; according to Mr. Sorg it cannot be determined whether the document was actually in the working file or the original loan file at any particular time; and as indicated by Great Southern's lack of knowledge that the document even existed until 24 hours before trial, it obviously was never consulted or relied upon by either party as a list of property in which

Great Southern claimed a security interest. Thus, the Court determines that admission of the document and related testimony still does not produce a description of collateral to make the security agreement comply with the Uniform Commercial Code.

The finding that Great Southern has no security interest is consistent with overall policy of the Bankruptcy Code. The evidence was that approximately 75% of the $875,000.00 loan was repaid prior to bankruptcy, leaving a balance due of about $243,000.00. The Bankruptcy Code is founded on the principle of equality of distribution. *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930); *Standard Oil Company v. Kurtz*, 330 F.2d 178, 180 (8th Cir.1964); *In re Kessler*, 23 B.R. 722, 725 (Bankr.S.D.N.Y.1982), *affirmed*, 55 B.R. 735 (S.D.N.Y.1985). Any relief granted Great Southern will come out of the pockets of other creditors. To permit Great Southern to profit from its own carelessness at the expense of other creditors who have dealt with the debtor in a more diligent fashion would ignore the purpose of the Bankruptcy Code.

Based on the foregoing, the Court hereby

ORDERS, ADJUDGES AND DECREES that Great Southern Savings and Loan Association has no security interest in any of the debtor's computer equipment and that the security agreement entered into between debtor and Great Southern Savings & Loan Association dated July 31, 1984, is unenforceable and void.