In re TRACY'S FLOWERS AND GIFTS, INC., Debtor.

William S. Meeks, Trustee, Plaintiff,

v.

First Bank of South Arkansas, Defendant.

Bankruptcy No. 00–11308.
Adversary No. 00–1518.

United States Bankruptcy Court,
E.D. Arkansas,
El Dorado Division.

June 12, 2001.

William S. Meeks, Crossett, AR, for Trustee.

Paul Lindsey, Camden, AR, for Defendant.

Teresa Wineland, El Dorado, AR, for Debtor.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

This adversary proceeding is before the Court upon the complaint of William S. Meeks, the Trustee in this case, to determine the priority, validity, and extent of a lien held by First Bank of South Arkansas ("Bank") in the property of Tracy's Flowers and Gifts, Inc. ("Debtor"). The Trustee alleges that the Bank's lien in the prop-

erty is unperfected, and, therefore, may be avoided by the Trustee. The issue is whether the Bank has a valid security interest in the property even though the relevant documents do not expressly grant a security interest.

The Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334 & § 157 (1994). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (E), & (K) (1994), and the Court may enter a final judgment in the case. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The parties submitted the issue to the Court upon the following stipulated facts in lieu of testimony.

Tracy Lea Passafiume and her mother, Janelle S. Carnes, originally operated the Debtor under the name "Tracy Lea Passafiume or Janelle S. Carnes d/b/a/ Tracy's Flowers and Gifts." The business was later incorporated as a retail florist operation, with Passafiume owning 75% and Carnes owning 25% of the stock. The Debtor was located at 226 California Street, Camden, Arkansas. The incorporated Debtor owned inventory, equipment, and accounts receivable. In November 1999, the Debtor moved its business location to 1226 Country Club Road, Camden, Arkansas.

On September 3, 1999, the Debtor executed a note in favor of the Bank on a form prepared by the United States Small Business Administration ("SBA"). The note evidenced a loan by the Bank to Tracy's Flowers & Gifts, Inc. in the amount of $40,000.00, which was guaranteed by the SBA.

The Debtor executed a financing statement on a UCC–1 Form, which was filed in the office of the Ouachita County Circuit Clerk on September 14, 1999, as filing number 99–788 and in the office of the Arkansas Secretary of State on September 20, 1999, as filing number 1208734. Copies of the financing statements were submitted as Joint Exhibit 2.

Item eight of each financing statement provides space for designating the various types of property to serve as collateral. In Item eight, the following language has been inserted: "This note is secured by all accounts, inventory and equipment now owned or hereafter acquired by Tracy's Flowers and Gifts, Inc. at 226 California in Camden, Arkansas, or wherever located. . . . The loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program. . . ." (Joint Ex. 2.)

No document titled "Security Agreement" was executed by the Debtor at the time of the making of the loan guaranteed by the SBA. The form filed with the Ouachita County Circuit Clerk was signed by representatives of the Debtor and the Bank. Beneath the Debtor's signature is printed the word "Debtor(s)" and beneath the Bank's signature is the printed term "Secured Party(ies)."

The Debtor filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code on June 2, 2000, and the Trustee was appointed. The Bank then moved for relief from stay and abandonment, claiming it had a valid first lien in the accounts, inventory and equipment of the Debtor. On August 7, 2000, the Trustee filed an adversary proceeding to avoid the Bank's lien in the personal property as unperfected, alleging that the Bank's security interest did not attach because no security agreement exists expressly granting a security interest.

The Bank's position is that under the composite document rule, the specific lan-

guage in the financing statement, promissory note, and loan application provides for a security interest in the collateral. The Trustee counters that even if the composite document rule applies in this case, the language in the three documents is insufficient to create a security interest.

*LAW*

The Bankruptcy Code provides:

(a) The trustee shall have . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists. . .

11 U.S.C. § 544(a)(1) & (2)(1994).

This section of the Bankruptcy Code is referred to as the "strong arm clause," and one of its purposes is to cut off unperfected security interests. 5 Collier on Bankruptcy ¶ 544.03 (Lawrence P. King et al. eds. 15th ed. rev.2000). Under the strong arm provision, if the Bank's security interest was not perfected on the date the petition was filed, the Trustee's rights in the collateral are superior to the Bank's rights. Ark.Code Ann. § 4–9–301(a) & (b) (Michie Supp.1999).

■■ Bankruptcy courts determine the nature and extent of property interests based on state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (citing U.S. Const. Art. I, § 8, cl.4); *In re N.S. Garrott & Sons,* 772 F.2d 462, 466 (8th Cir.1985). (citing 4 Collier on Bankruptcy ¶ 541.02[1] (Lawrence P. King, 15th ed.1985)). Thus, whether the Bank has a perfected security interest is a matter of state law.

Under Arkansas law, a non-possessory security interest is perfected if: (1) the debtor has rights in the collateral; (2) the debtor signs a security agreement in favor of the secured party which contains a description of the collateral; (3) value is given by the secured party to the debtor; and (4) a valid financing statement is properly recorded. Ark.Code Ann. § 4–9–203(1)(a)–(c) (Michie Supp.1999); Ark. Code Ann. § 4–9–302(1) (Michie Supp. 1999); *Rice v. Citizens First Bank of Fordyce (In re Cheqnet Systems, Inc.),* 227 B.R. 166, 168 (Bankr.E.D.Ark.1998) (citing *In re Hot Shots Burgers & Fries, Inc.,* 169 B.R. 920 (Bankr.E.D.Ark.1994)).

Under the Arkansas Code, a security agreement is an agreement "which creates or provides for a security interest." Ark. Code Ann. § 4–9–105(1) (Michie Supp. 1999). The term "security interest" means "an interest in personal property or fixtures which secures payment or performance of an obligation." Ark.Code Ann. § 4–1–201(37) (Michie Supp.1999).

The Trustee relies on the definition of "security agreement" to support his argument that the second requirement necessary for a perfected security interest has not been satisfied. He contends that in addition to being signed by the debtor and containing a description of the collateral, an enforceable security agreement under section 4–9–105(1) must create or provide for a security interest. The Trustee ar-

**4**

gues that this requirement is lacking in all documents the Bank offers as potential security agreements.

In support of his contention, the Trustee cites *Gassaway v. Erwin (In re Shelton)*, 472 F.2d 1118 (8th Cir.1973). In that case, the court held that a buyer and seller of an automobile clearly intended to create a security interest in favor of the seller by executing a bill of sale setting out the terms of payment and by filing an application for title and certificate of title showing the seller as a holder of a first lien and the buyer as owner.

Construing Missouri law on secured transactions with language virtually identical to that in Arkansas, the court held that, regardless of the parties' apparent intent, such documents did not satisfy the U.C.C. requirements for a security agreement. The court further stated that "[a]lthough no precise words are required in the Code, the definitions given indicate that there must be some language in the agreement actually conveying a security interest." *In re Shelton*, 472 F.2d at 1120.

The Trustee also relies on *Gibbs v. King*, 263 Ark. 338, 564 S.W.2d 515 (1978) for the proposition that an enforceable security agreement must evidence language of grant or conveyance in order to create a security interest. The Trustee specifically focuses on the following passage: "Inasmuch as this record is void of any security agreement executed by appellant granting a security interest in the tractor to appellee ... appellee had no valid security interest in the tractor ...." *Gibbs*, 263 Ark. at 342, 564 S.W.2d at 517.

Although the *Gibbs* court states that the grant of a security interest was essential to a document purporting to be a security agreement, the court did not hold that specific or express words of grant or conveyance were necessary. Research reveals no Arkansas case citing *Gibbs* for

that proposition. It appears that the Arkansas Supreme Court has not addressed the precise issue of whether specific words of grant are necessary in order to create or provide for a security interest under the Arkansas Code.

The Arkansas Code provisions on secured transactions contemplate two separate documents to achieve perfection, a security agreement to evidence the parties' intent and a financing statement to give notice of the agreement to third parties. State law also permits the security agreement to serve as a financing statement. Ark.Code Ann. § 4–9–402(a) (Michie Supp. 1999). However, it is well settled that a separate document specifically named "security agreement" is not essential to enforce an otherwise valid security interest. *Personal Jet, Inc. v. Callihan*, 624 F.2d 562, 568 (5th Cir.1980) (letter indicating loan was secured by collateral was enforceable security agreement); *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir.1973)(financing statement and directors' resolution together constituted the security agreement); *Nunnemaker Transp. Co. v. United Cal. Bank*, 456 F.2d 28, 31–32 (9th Cir.1972) (letter agreement served as adequate security agreement).

Although a security agreement can serve as a financing statement, most courts hold that a bare-bones financing statement alone cannot also serve as a security agreement. *In re Shelton*, 472 F.2d at 1120 (a financing statement usually does not meet statutory requirement of a grant of security interest); *General Elec. Credit Corp. v. Bankers Commercial Corp.*, 244 Ark. 984, 429 S.W.2d 60 (1968) (financing statement, standing alone, does not create a security interest).

However, many instances exist in which courts have held that a financing statement also satisfies the definition of a secu-

rity agreement when further language granting a security interest is added to the document and other statutory requirements are met. See, e.g., *Morey Mach. Co. v. Great Western Indus. Mach. Co.*, 507 F.2d 987, 990 (5th Cir.1975) (financing statements stamped "Secured Hereby" made provision for a security interest); *Mitchell v. Shepherd Mall State Bank (In re Mitchell)*, 458 F.2d 700, 703–04 (10th Cir.1972) (when grant of security interest is present, financing statement can serve as a security agreement); *Bossingham v. Bloomington Prod. Credit Ass'n (In re Bossingham)*, 49 B.R. 345, 349 (S.D.Iowa 1985)(standard financing statement could not serve as security agreement in absence of language granting security interest); *Cookeville Prod. Credit Ass'n v. Frazier (In re Frazier)*, 16 B.R. 674, 679 (Bankr. M.D.Tenn.1981) (in view of language stating instrument would serve as both financing statement and security agreement and granting a security interest, financing statement was also security agreement). See, also, *In re Wiegert*, 145 B.R. 621, 622 (Bankr.D.Neb.1991) (sales slip was security agreement); *Komas v. Future Sys., Inc.*, 71 Cal.App.3d 809, 139 Cal.Rptr. 669, 22 U.C.C. Rep. Serv. 550 (1977) (composite of multiple documents served as security agreement); *In re Bazaar de la Cuisine Int'l., Inc.*, 20 U.C.C. Rep. Serv. 1049 (Bankr.S.D.N.Y.1976) (promissory note deemed security agreement).

As to the issue of whether specific words of grant or conveyance are required under the U.C.C. definition of "security agreement," two opposing lines of cases have developed. Under the narrow view, termed the "American Card Rule," techni-cal words of conveyance are necessary to create or provide for a security interest. *Mitchell v. Shepherd Mall State Bank (In re Mitchell)*, 458 F.2d 700, 702 (10th Cir. 1972) (enforceable security agreement requires language specifically creating or granting a security interest in the collateral); *Stainer v. Wolfe (In re Carmack)*, 48 B.R. 175, 177 (Bankr.N.D.Okla.1985) (language stating "note is secured by personal income tax refund" was insufficient to grant a security interest); *Bradley v. K & E Inv. Inc.*, 847 S.W.2d 915, 921–22 (Mo. App.1993)( floor plan agreement did not create security interest because terms commonly associated with secured transactions were missing); *American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150, 152 (1963) (financing statement was not a security agreement because it lacked grant of a security interest). The strict view is apparently the minority view. *Gibson County Farm Bureau Coop. Ass'n v. Greer*, 643 N.E.2d 313, 318 (Ind.1995)(commenting that "the American Card Rule has been criticized and has, for the most part, been rejected"); James J. White & Robert S. Summers, 4 Uniform Commercial Code § 31–3, n. 37 (West, 4th ed.1995) (surmising that the strict view is the minority approach and quoting with approval G. Gilmore, 1 Security Interests in Personal Property § 11.4 at 348 (1965)).[1]

The broad view is that the statute is satisfied when a security interest is provided for or stipulated to, regardless of the type of document used or the absence of specific granting language. *Nolden v. Plant Reclamation (In re Amex–Protein Development Corp.)*, 504 F.2d 1056, 1058–

---

1. Gilmore, one of the drafters of the Uniform Commercial Code, has criticized the American Card case, stating that "[c]ertainly nothing in § 9–203 requires that the 'security agreement' contain a 'granting' clause. The § 9–402 financing statement contained all that was necessary to satisfy § 9–203 statute of frauds as well as being sufficient evidence of the parties' intention to create a security interest. . . ." Grant Gilmore, 1 Security Interests in Personal Property § 11.4, 342–348 (1965).

59 (9th Cir.1974) (note stating "this note secured by a security interest in" was sufficient to create a security interest; granting language not necessary); *Markie v. Phillips (In re Phillips)*, 24 B.R. 712, 713–14 (Bankr.E.D.Cal.1982)(sales agreement stating "balance is to be represented by a note secured with the stock in trade and merchandise inventory as collateral" was grant of security interest); *Simplot v. Owens*, 119 Idaho 243, 805 P.2d 449, 451 (1990) (no granting language is required to create a security interest); *Komas v. Future Systems*, 71 Cal.App.3d 809, 139 Cal. Rptr. 669, 22 U.C.C. Rep. Serv. 550 (1977) (no specific form is needed to create security interest; security agreement is enforceable if it leads to the conclusion that parties intended security interest).

Under the broad view, a security agreement is enforceable if its language expresses the intent of the parties to grant a security interest, in contrast to the narrow view focusing on specific granting language regardless of intent. See, e.g., *In re Bollinger Corp.*, 614 F.2d 924, 928 (3d Cir.1980) (a document signed by the debtor, describing the collateral, and evidencing parties' intent to create security interest is a security agreement); *Maddox v. Federal Deposit Ins. Corp. (In re Maddox)*, 92 B.R. 707, 711 (Bankr.W.D.Tex. 1988) (the composite of several documents evidenced intent to create a security interest); *Evans v. Everett*, 279 N.C. 352, 183 S.E.2d 109, 114 (1971) (financing statement evidencing intent to create security interest met minimal requirements of security agreement).

■ As previously stated, the Arkansas Supreme Court has not decided the issue of whether language actually conveying a security interest is necessary to create a security interest. However, this Court is of the opinion that the Arkansas Supreme Court would hold the broad view that any language that asserts that specific personal property is encumbered as security for a debt creates or provides for a security interest under section 4–9–105(1).

This view is apparently held by courts in the majority of jurisdictions where the definition of "security agreement" is identical to that of section 4–9–105(1) of the Arkansas Code. Furthermore, it comports with the goal of Article 9 as originally drafted, which is to provide a simplified structure within which present-day secured financing transactions can be accomplished expeditiously. Finally, this view is supported by a literal reading of the statute, which does not require specific words to create or provide for a security interest.

■ Applying this reasoning to the instant case, the Court finds that the financing statement executed by the parties and filed with the Ouachita County Circuit Clerk also serves as a valid, enforceable security agreement. The financing statement recites that "This note is secured by" the specified collateral and that "The loan secured by this lien" was made through an SBA program. This additional language is not called for in response to item eight and is not found in a typical, bare-bones financing statement requiring only a recitation of types of collateral covered by the parties' security agreement.

While the first paragraph under item eight does not literally grant a security interest by using those precise words, it does refer to the "note," representing the Debtor's obligation to repay, and it states that the obligation is "secured by" the specified personal property. Read in conjunction with the first paragraph under item eight, the words "The loan secured by this lien" in the second paragraph recognize an interest in personal property to secure payment, a concept synonymous with the term "security interest." As previously stated, the financing statement is

signed by the debtor as required by section 203(1)(a) of the Arkansas Code.

Furthermore, the document designates the Debtor as "debtor" and the Bank as "secured party." Under secured transactions law, "debtor" is "the person who owes payment or other performance of the obligation secured...." Ark.Code Ann. § 4–9–105(d) (Michie Supp.1999). "Secured Party" means "a lender, seller, or other person in whose favor there is a security interest ...." Ark.Code Ann. 4–9–105(m) (Michie Supp.1999). These definitions underscore the fact that the parties have entered into an agreement whereby the Bank, as the secured party, has been granted a security interest to secure the obligation owed by the Debtor.

An analysis of the financing statement must include consideration of its terms as defined under secured transactions law. Such a consideration coupled with a focus on the language used to evidence the parties' agreement reveals that the Bank acquired a consensual interest in personal property of the Debtor to secure payment of the loan, in other words, a security interest. The absence of words of grant and the specific term "security interest" does not preclude the creation or provision for a security interest essential to an enforceable security agreement. Nor does it obscure the obvious intent of the parties to create or provide for a security agreement.[2]

*In re Shelton,* the Eighth Circuit Court of Appeals case that asserted the necessity for language of conveyance of a security interest, can be distinguished on its facts. In that case, the documents consisted of a bill of sale, an application for Missouri car title and the certificate of title. The bill of sale described the automobile, set out the terms of payment and provided that the debtor would insure the automobile. The bill of sale contained no language purporting to establish a security interest. The application for the Missouri car title was signed by the debtor but, rather than establishing a security interest, was an attempt to perfect a security interest, if one existed. The documents signed by the Debtor in *Shelton* do not contain the additional language contained in this case: "This note is secured by all accounts, inventory and equipment .... The loan secured by this lien was made under the United States Small Business Administration ..." (See Joint Ex. 2.)

Furthermore, the credit application submitted and signed by the Debtor in this case recites, "Briefly describe the property to be given as security ... Property Description: Accounts Receivables Inv. fixtures, etc." (Joint Ex. 3.) This document clarifies what was intended by the additional language of the financing statement. *In re Nickerson & Nickerson, Inc.,* 452 F.2d 56, 57 (8th Cir.1971) (deficient description of collateral in security agreement can be clarified by financing statement); *In re Cantu,* 238 B.R. 796, 800 (8th Cir. BAP 1999) (creditor's loan documents, considered together, created enforceable security interest), *aff'd,* 221 F.3d 1341 (8th Cir.2000).

Additionally, in *Shelton* the court did not mention the use of defined terms applicable to secured transactions such as "secured party" and "debtor" that, by definition, evidence the creation or provision of a security interest. Finally, the court in

2. However, the Court does not condone the Bank's use of a dual purpose financing statement which fails to expressly grant a security interest through a formal security agreement. The Court agrees with the observation of the North Carolina Supreme Court that such a practice "is an example of draftsmanship likely to produce litigation and [is] not to be recommended." *Evans v. Everett,* 279 N.C. 352, 183 S.E.2d 109, 114 (1971)

*Shelton* emphasized that, "no precise words are required in the Code," leaving leeway for lower courts to construe more broadly the formal requirements of a security agreement. *See, e.g., United States v. Missouri Farmers Assocs.*, 580 F.Supp. 35, 36 (E.D.Mo.1984)(holding precise words granting creditor a security interest in debtor's crops were not required to create enforceable security interest), *aff'd per curiam*, 764 F.2d 488 (8th Cir.1985).

## CONCLUSION

Because the financing statement filed in Ouachita County creates or provides for a security interest in the personal property of the Debtor, is signed by the Debtor, and contains a description of the collateral, it is a valid, enforceable security agreement.

The Trustee's complaint to avoid the Bank's lien and for turnover of proceeds from the sale of the collateral is hereby denied.

IT IS SO ORDERED.