**In re ARCTIC AIR, INC., Debtor.**

**Bankruptcy No. 95–12405.**

United States Bankruptcy Court, D. Rhode Island. ·

Oct. 16, 1996.

Paul A. Lancia, Providence, RI, for Debtor Arctic Air, Inc.

Louis A. Geremia, Trustee, Providence, RI.

Howard S. Goldman, Boston, MA, for Energy Control Systems, Inc.

Deena F. Christelis, Providence, RI, for Trustee Louis A. Geremia.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO SECURED CLAIM

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on August 28, 1996, on the Chapter 7 Trustee's Objection to the secured claim of Energy Control Systems, Inc. The Trustee's objection to Energy Control's status as a secured creditor is based on the fact that the parties never signed a security agreement. The only writings between the Debtor and Energy Control Systems are: (1) a UCC–1 Financing Statement, with a list of collateral attached; and (2) invoices from Energy Control Systems to the Debtor for goods sold and delivered. At the conclusion of the hearing, the Court indicated its inclination to rule in favor of the Trustee, but the Creditor requested, and was granted leave to file an additional memorandum in support of its alleged secured status. Upon consideration of Energy Control's supplemental filings, we are still unable to agree with its position.

Instead, we adopt and incorporate herein by reference the arguments of the Trustee. (*See* Exhibit A, Trustee's Memorandum, Docket # 55). Based upon the record and the documents provided, there is no competent evidence of the Debtor's intent to grant a security interest to Energy Control Systems under either R.I.Gen.Laws § 6A–9–203(1)(a), or *American Card Co., Inc. v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150, 151–52 (1963). To put it in terms fact specific to this case, a UCC–1 financing statement with a description of the property, together with invoices from the creditor to the Debtor, do not create a valid security interest in the goods. Accordingly, the Trustee's Objection is SUSTAINED, and Energy Control System's claim is allowed as an unsecured claim.

Enter Judgment consistent with this order.

## TRUSTEE'S MEMORANDUM IN SUPPORT OF OBJECTION TO SECURED CLAIM OF ENERGY CONTROL SYSTEMS, INC.

### Issue

The sole issue is whether Energy Control Systems, Inc. ("Energy Control") holds a

valid and effective security interest in certain equipment of the debtor where no security agreement was entered into between the debtor and Energy Control.[1] Energy Control claims a security interest in collateral described in the invoices attached hereto as Exhibit "A".

### Summary of Argument

Under applicable federal and state laws, Energy Control's asserted security interest in the debtor's equipment is ineffective because there is no writing signed by the debtor evidencing an agreement to grant Energy Control a security interest in debtor's equipment.[2]

### Brief Statement of Facts

1. The debtor, Arctic Air, Inc. filed a Chapter 11 petition on September 29, 1995. The case was converted to a Chapter 7 on November 22, 1995, and Louis A. Geremia was appointed the Chapter 7 trustee.

2. The trustee filed a Notice of Intended Sale at Public Auction of the debtor's assets on February 23, 1996.

3. Energy Control filed a Conditional Objection to said sale on March 1, 1996 on the grounds that it had a perfected security interest in the property to be sold at auction, therefore Energy Control was entitled to the proceeds of the proposed sale of debtor's assets.

4. On March 7, 1996, the Court granted the Notice of Intended Sale at Public Auction subject to the two limited objections asserted by Energy Control in the proceeds.

5. The sale was held on March 11, 1996 and your Trustee received the amount of $4,380.00 from the sale of the equipment in controversy. Energy Control claims $2,014.88 of these proceeds. A list of

equipment and the prices obtained at auction is attached hereto as Exhibit "B".

6. On July 1, 1996, your Trustee filed a Motion to Disallow the Secured Claim filed by Energy Control on the grounds that although Energy Control did file a financing statement on July 7, 1995 alleging a security interest in debtor's equipment, in the absence of a security agreement between the parties, Energy Control had not produced proper documentation which evidenced a secured claim.

7. Thereafter, Energy Control filed an Opposition to Motion to Disallow Claim on the grounds that the financing statement together with the invoices constitute a validly perfected security interest in the proceeds from the auction.

8. On July 28, 1996, a hearing was held on said Trustee's Motion, and the Court requested each party to submit a Memorandum of Law on the issues before the Court.

### Memorandum of Law

In accordance with R.I.Gen.Laws Section 9–203(1), there are three requirements which must be satisfied in order for a security interest to attach: (i) value must have been given, (ii) the debtor must have rights in the collateral; and (iii) the *debtor* must have *signed* a *security agreement* which contains a description of the collateral. In the absence of any one of the these three requirements, a security interest shall not "attach", and therefore is not enforceable against the debtor nor third parties with respect to the collateral. R.I.Gen.Laws Section 6A–9–203(1) and (2). Furthermore, the security interest shall not "attach" for purposes of its ultimate perfection.

According to R.I.Gen.Laws Section 6A–9–105(11), a "security agreement" means an

---

**1.** Please note that one of the financing statements claims an interest in the real estate located at 115 Fletcher Avenue, Cranston, Rhode Island. This alleged security interest is irrelevant to the issue at hand and does not reflect the proper method for perfecting a security interest in realty.

**2.** The Court is reminded that the debtor is a corporation, and Rhode Island corporate law requires a corporate resolution authorizing any officer or director to formally bind the corporation's assets. In this case, there was no corporate resolution to pledge the assets in controversy nor to authorize any signature on behalf of the corporation.

agreement which creates or provides for a security interest. Moreover, pursuant to R.I.Gen.Laws Section 6A–9–203, Official Comment 5:

> The *formal requisite of a writing* stated in this section is not only a condition to the enforceability of a security interest against third parties, it is in the nature of the Statute of Frauds. Unless the secured party is in possession of the collateral, his security interest, *absent a writing which satisfies paragraph (1)(a),* is not enforceable even against the debtor, and cannot be made so on any theory of equitable mortgage or the like. [Emphasis added]

In this case, Energy Control has produced a financing statement together with copies of invoices. No separate written agreement has been provided which evidences the debtor's intent to grant a security interest. Furthermore, neither the financing statement nor the invoices contain any language which evidences any intent to grant a security a interest to Energy Control.

Most recently, in 1995, this Court decided this same issue in the case of *In re Coleman,* Bk No. 94–10381; A.P. No. 95–1033. In *Coleman* case, the Trustee sought a determination from this Court that an alleged security interest asserted by a creditor in an automobile owned by the debtor was invalid since there was no written security agreement between the parties. This Court held that "in the absence of a written security agreement, the Defendant's claimed security interest is invalid as against the Trustee". This Court agreed with and adopted the position of the Trustee as set forth in his Memorandum of April 21, 1995, and his Supplemental Memorandum of June 26, 1995.

The Trustee focused on the decision of the Rhode Island Supreme Court in the well-known case of *American Card Co., Inc. v. H.M.H. Co.,* 97 R.I. 59, 196 A.2d 150 (1963). In that case, the Court addressed the exact issue presented in the case at bar: "whether ... Section 6A–9–203(1) of the code requires ... a written security agreement between the debtor and the secured party before a prior security interest in any collateral can attach." *Id.* at 60, 196 A.2d 150. In *American Card,* the facts concerned a receivership

proceeding in which the receivers contested the validity of an alleged security interest claimed by a creditor on the grounds that while a financing statement had been executed by both the debtor and creditor, and contained a description of the collateral, there was no written security agreement. The Court did acknowledge that "while it is possible for a financing statement and a security agreement to be one and the same document ... it is not possible for a financing statement which **does not contain the debtor's grant of a security interest** to serve as a security agreement." *Id.* at 62, 196 A.2d 150. Thus, the Court recognized that a copy of a security agreement which contains a description of the collateral and the signatures of both the debtor and creditor may be considered as financing statement, but not the opposite. The Court concluded that "since the financing statement filed contains no such grant it does not qualify as a security agreement." *Id.* at 63, 196 A.2d 150.

In the case at bar, Energy Control merely submits a financing statement together with copies of invoices absent any language granting a security interest to them. Thus, in accordance with the holding in *American Card,* these financing statements cannot qualify as evidence of a security agreement for purposes of creating a validly perfected security interest.

This *American Card* rule has been upheld in a plethora of other courts. *See, Shelton v. Erwin,* 472 F.2d 1118, 1120 (8th Cir.1973); *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700 (10th Cir.1972); *In re Mancini Meat & Provision Co.,* 23 UCC Rep. 1037, 1977 WL 25609 (D.Conn.1977); *Gibbs v. King,* 263 Ark. 338, 564 S.W.2d 515 (1978); *In re Wolsky,* 68 B.R. 526 (Bkrtcy.N.D.1986); *In re Shinville Assoc., Inc.,* 46 B.R. 352 (Bankr.W.D.Mich.1985); *In re Baker,* 48 B.R. 932 (Bankr.W.D.N.Y.1985); *In re Cambridge,* 37 UCC Rep. 618, 34 B.R. 88 (Bankr. W.D.Mich.1983); *In re Coffee Cupboard, Inc.,* 33 B.R. 668 (Bankr.E.D.N.Y.1983); *In re Don Miller, Inc.,* 37 UCC Rep. 1366, 35 B.R. 714 (Bankr.E.D.Wis.1984); *Pontchartrain State Bank v. Poulson,* 684 F.2d 704 (10th Cir.1982).

While this Trustee does acknowledge cases which posit the *composite document* theory, allowing a Court to consider all documents *together* in order to find the granting of a security interest, the facts in the case at bar can clearly be distinguished from these cases. In the cases of *In the Matter of Numeric Corp.*, 485 F.2d 1328 (1st Cir.1973) and in *Casco Bank & Trust Company v. Cloutier*, 398 A.2d 1224 (Supr.Jud.Ct.Maine 1979), in addition to the financing statement, there were additional documents such as, a corporate resolution in *Numeric* and a promissory note in *Casco*, which clearly evidenced an intent on the part of the debtors to grant a security interest. These additional documents contained *clear language* granting the creditor a security interest in the disputed assets. However, in the case at bar, there are no additional documents evidencing an intent to grant Energy Control a security interest in the debtor's assets. There is no corporate resolution nor a promissory; merely a financing statement with a list of collateral attached to it. *See also, In re Rite–Cap*, 7 B.R. 113 (Bankr.R.I.1980) [Court considered promissory note together with financing statement in determining that a security agreement existed]; *In re Frace*, 17 B.R. 198 (Bkrtcy.D.Maine 1982) [Court considered promissory note, agreement pertaining to SBA loan, certification and receipt pertaining to the SBA loan, settlement sheet, and financing statement in determining a security agreement had been established]. Unlike *Rite–Cap* and *Frace*, in the case at bar, there is no other document, other than a financing statement and copies of invoices, which evidence the granting of a security interest to Energy Control.

### Conclusion

For all the above reasons, this Honorable Court must conclude that Energy Control's alleged security interest in the proceeds from the auction of debtor's assets is ineffective, and that Energy Control should be treated as an unsecured creditor of the debtor's estate.

Louis A. Geremia, Trustee

By his attorney:

/s/ Louis A. Geremia
Louis A. Geremia, Esquire
Geremia, DeMarco & Christelis
189 Canal Street
Providence, Rhode Island 02903
(401) 331–3700
(401) 351–8295

### CERTIFICATION

I hereby certify that a true copy of the within Memorandum was mailed to Sheryl Serreze, Attorney to the U.S. Trustee, 10 Dorrance Street, Providence, Rhode Island 02903 and to Howard S. Goldman, Esquire, 155 Federal Street, Boston, M.A. 02110 on the 6th day of September, 1996.

/s/ [Signature]

## EXHIBIT "A"

■■■■■■■■■■■

| Post-It™ brand fax transmittal memo 7671 | # of pages ► | |
|---|---|---|
| To *Dee N A* | From *RCB* | |
| Co. | Co. *Arctic Air, Inc* | |
| Dept. | Phone # | |
| Fax # *351— 8393* | Fax # | |

HPFAX CORP.            ` 547 7001    P.08

6 3 9 8 5 0      1 PG.

To: Mike D'Angelo / Energy Control

From: Erwin Vahlsing, Jr. / Arctic Air, Inc        Jan  7  10 46 AM '95

Subject: Equipment Listing                         Exhibit  A

| | Qty | Manufacturer | Description | Model # | Serial # | |
|---|---|---|---|---|---|---|
| #114 | 1 | Flagler | 5 in 1 | Tag missing | | 350.00 |
| #115 | 1 | Flagler | 5 in 1 | 22 AWG SCLEAT | HSCSC433-283 | 300.00 |
| #121 | 1 | Flagler | Pittsburgh 20GA STD | 3668-360 | | 50. |
| #141 | 1 | Tennsmith | Finger Break U48 | 14556 | | 350. |
| #143 | 1 | Tennsmith | Break - 8ft 14Guage | No Tag | | 1100. |
| #142 | 1 | Lockformer | Cheek Bender | #24 / 64 | | 70. |
| #132 | 1 | Wilder | Slitter | 1624 | 24059 | 175. |
| #154 | 1 | Wysong | Sheer 52" 16 Guage | | | 1150. |
| #112 | 1 | Duro Dyne | Pinspotter | | 7211 | $25. |
| #128 | 1 | Connecticut | 4' Brake 18 Guage | Model 423 | | $425. |
| #123 | 1 | Lockformer | Drive Unit 30" | — | | $100. |
| #122 | 1 | Lockformer | Drive Unit 18" | | | $60. |
| #137 | 1 | Lockformer | 36" Roller | | | 275. |

by: _____
Edward Marrison, President, Arctic Air Inc.

by: _____
Erwin Vahlsing Jr., Controller, Arctic Air inc

by: _____
Stephen F. Rush, President Energy Control Systems, Inc.

■■■■■■■■■■■