**In re Francisco J. ESTEVES ORTIZ, Debtor.**

No. 01–08533 (ESL).

United States Bankruptcy Court, D. Puerto Rico.

July 17, 2002.

Teresa M. Lube Capo, San Juan, PR, for debtor.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE,
Bankruptcy Judge.

This case is before the court on debtor's objection to the secured status of the proof of claim filed by Empresas Berríos, Inc. d/b/a Mueblerías Berríos 030858 ("Mueblerías Berríos"), alleging that the security agreement was not duly perfected pursuant to the Commercial Transactions Act of 1996, as amended (the "Commercial Transactions Act"), 19 L.P.R.A. §§ 2001 *et seq.*

### Factual and Procedural Background

1. On July 2, 2000, debtor Francisco J. Esteves Ortiz purchased home furniture and appliances for personal use ("consumer goods") from creditor Mueblerías Berríos.

2. On that same date, the parties executed an installment sales contract or "contrato de venta al por menor a plazos."

3. On July 28, 2000, a copy of the installment sales contract was filed with the Registry of Commercial Transactions at the Office of the Secretary of State of the Commonwealth of Puerto Rico (the "Registry of Commercial Transactions").

4. On August 1, 2001, debtor filed for relief under Chapter 13 of the Bankruptcy Code (the "Code").

5. On August 15, 2001, creditor Mueblerías Berríos filed a secured claim in the amount of $2,895.06.

6. On August 29, 2001, Mueblerías Berríos objected to the confirmation of the Chapter 13 plan dated July 31, 2001, on the grounds that the plan did not provide for payment of its secured claim; and, that debtor failed to provide adequate protection as required under the Code. Debtor's reply was filed on September 12, 2001.

7. On September 11, 2001, debtor objected to the secured status of Mueblerías Berríos' claim, for failure to comply with the provisions of the Commercial Transactions Act. Mueblerías Berríos replied on October 10, 2001.

8. On December 7, 2001, the Chapter 13 Trustee recommended the proposed plan dated July 31, 2001. The plan was confirmed on December 13, 2001. The objection to confirmation filed by Mueblerías Berríos was denied for failure to prosecute as Mueblerías Berríos did not appear at the confirmation hearing held on December 13, 2001.

9. On January 25, 2002, the parties filed a Proposed Pre–Trial Report, and a supplement report on February 1, 2002.

10. On February 1, 2002, a hearing was held on debtor's objection to Mueblerías Berríos' claim. The parties submitted the

matter on the briefs as there are no relevant material facts in controversy.

### *Applicable Law and Discussion*

A. *The Commercial Transactions Act of 1996.*

On September 19, 1996, the Puerto Rico Legislature enacted the Commercial Transactions Act of 1996, 19 L.P.R.A. §§ 2001 *et seq.*, which adopts several sections of Article 9 of the Uniform Commercial Code ("U.C.C."),[1] including any transaction intended (a) to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; (b) to any sale of accounts or chattel paper; and also (c) to consignments. The Commercial Transactions Act also applies "to security interests created by contract including pledge, assignment, chattel mortgage, factor's lien, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security." *See generally* 19 L.P.R.A. § 2002 which adopts former Section 9–102 of Article 9 of the U.C.C. (hereinafter "Article 9").

The purpose of the Commercial Transactions Act is to expedite and facilitate the banking transactions in Puerto Rico and the United States by creating uniformity and consistency in the financing of chattel mortgages and other negotiable instruments. *See* Legislative History of Law No. 241 of September 19, 1996. *See also 19 L.P.R.A. §§ 2051 et seq.*

Section 2051 adopts former Section 9–201 of Article 9 and provides that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral and creditors,"

---

**1.** Article 9 of the U.C.C. has been substantially modified since the enactment of the Commercial Transactions Act. The newly revised

Article 9 of the U.C.C. became effective on July 1, 2001.

except as provided by 19 L.P.R.A. §§ 2001–2207. Section 2053(1) adopts former Section 9–203 of Article 9 and provides the formal requirements to perfect a security interest, and which are essential for the enforcement of the security interest against the debtor, third parties and creditors. In general, it provides that a security interest is not enforceable against a debtor or third parties with respect to a collateral, and does not attach, unless all the mandated requirements are met, that is: (a) the debtor has signed a security agreement which contains a description of the collateral; (b) a value has been given to the collateral; and, lastly, (c) the debtor's rights in the collateral are set forth in the security agreement. Section 2053(2) provides that "a security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) of this section have taken place unless explicit agreement postpones the time of attaching."

Section 2203(2) adopts former Section 9–503 of Article 9 and provides that a security agreement shall include a notice to the debtor regarding the rights of the secured party to the collateral in the event of default. Section 2203(2) specifically provides that, "[t]he security agreement shall bear the following notice in the space immediately preceding the signature of the debtor: NOTICE TO DEBTOR. YOU ARE HEREBY NOTIFIED THAT THE SECURED PARTY MAY AFTER ANY EVENT OF DEFAULT TAKE POSSESSION OF THE COLLATERAL WITHOUT JUDICIAL PROCESS." The default notice to the debtor is a mandatory requirement for perfection of the security agreement.

Section 2102 adopts former Section 9–302 of Article 9 and provides that "[a] financing statement must be filed to perfect all security interests" unless otherwise provided by the Commercial Transactions Act. Section 2151(1)(b) adopts former Section 9–401 of Article 9 and provides that the financing statement is filed with the Registry of Commercial Transactions.

Section 2103(1) adopts former Section 9–303 of Article 9 and provides that "[a] security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in §§ 2015, 2102, 2104, 2105 and 2106." This section also provides that if the steps to perfect a security interest are taken before the security interest attaches, then the security interest "is perfected at the time when it attaches."

Section 2152(1) adopts former Section 9–402 of Article 9 and provides the formal requirements of the financing statement, which are: (a) the name and address of both the debtor and the secured party; (b) the "address of the secured party from which information concerning the security interest may be obtained;" (c) it shall be signed by the debtor; and, (d) a description of the collateral. Authentication of the document is not a mandatory requirement of the financing statement. Under Section 2152(1) "[a] copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor." This section also provides that a copy of a security agreement or a financing statement "is sufficient as a financing statement if the security agreement so provides and has been authenticated or if the original has been filed in this Commonwealth." Thus, filing a financing statement or an authenticated security agreement as a financing statement with the Registry of Commercial Transactions is a mandatory requirement to perfect a security interest.

White & Summers, commentators on the U.C.C., interpret the creation of a security interest under Section 9–203 of the U.C.C. as follows:

How does a secured party create an enforceable Article 9 security interest? Section 9–203 requires only a few steps. In general, (1) the creditor must give value, (2) the debtor must have rights in the collateral, (3) **there must be a security agreement,** (4) the security agreement must describe the collateral, and (5) either the security agreement must be in writing signed by the debtor or there must be some other "authenticating" event, as described in 9–203(b)(3), **to provide grounds for concluding that the parties have entered into a security agreement.** (Emphasized.)

4 White & Summers, *Uniform Commercial Code* § 31–2 (5th ed.). *See also In re Arctic Air, Inc.,* 202 B.R. 533 (Bankr. D.Rhode Island 1996); *Woonsocket Tire Sales, Inc. v. Dowling (In re Rite–Cap, Inc.),* 7 B.R. 113 (Bankr.D. Rhode Island 1980).

U.S. Bankruptcy Judge William C. Hillman, in his treatise *Documenting Secured Transactions, Effective Drafting and Litigation,* (1998), provides a clear and practical guide to determine what is a security interest; a security agreement; how it is perfected; and, when it becomes enforceable against the debtor and third parties. Judge Hillman emphasizes the importance of touching "all the bases" in a transaction under Article 9 of the U.C.C.:

It is important that documentation touch all of the bases. Too often, an essential element is overlooked . . . .

A *security interest is* "an interest in personal property or fixtures that secures payment or performance of an obligation." [U.C.C. § 1–201(37) ]. It is created by a *security agreement,* "an agreement which creates or provides for a security interest." [U.C.C. § 9–105(1) ].

When a security interest becomes enforceable against the debtor with respect to the collateral, it has "attached." [U.C.C. § 9–203(2) ]. Attachment has three elements: (1) agreement has been reached; (2) value has been given; and (3) the debtor has rights in the collateral. [U.C.C. § 9–203(1) ].

*Id.* at page 3–1.

■ To create a security interest, a security agreement is required. Judge Hillman's treatise states that "the agreement must be (1) in writing; (2) signed by the debtor; and, (3) contain a description of the collateral." *Id.* at 4–1. To perfect the security interest, "the security agreement itself may be placed in the public record, or the debtor may execute a short-form 'financing statement,' which merely gives the names and addresses of the parties and describes the nature of the collateral, the filing of the latter being the general rule, at least in commercial transactions." *Id.* at pages 4–1 and 4–2.

In *Arctic Air,* the court held that to make a determination on the perfection of a security interest, it must look into the intent of the parties when executing a sales contract, and any other additional documents related to the transaction. The court held that a financing statement and a security agreement may be "one and the same document," however, "it is not possible for a financing statement which does not contain the debtor's grant of a security interest to serve as a security agreement." 202 B.R. at 535. The court further held that:

[A] copy of a security agreement which contains a description of the collateral and the signatures of both the debtor and the creditor may be considered as financing statement, but not the oppo-

site. The Court [*American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150 (1963) ] concluded that "since the financing statement filed contains no such grant it does not qualify as a security agreement." 97 R.I. at 63, 196 A.2d 150. *Id. See also Documenting Secured Transactions*, at page 4–2.

In *Woonsocket*, 7 B.R. at 115, the court held that if the financing statement or the language of the contract upon which the creditor claims its security does not create a security, then other documents may be considered to make a determination on whether a security interest was indeed created in favor of the creditor. The court held that:

> Article 9 of the Uniform Commercial Code requires that a court, in effectuating the Code's provisions, "look into the substance rather than the form of the transaction to determine whether or not a transaction is a security agreement."

*Id. See also Documenting Secured Transactions*, at pages 4–9, wherein Judge Hillman explains that the security agreement "need not be a single document." In this situation, the courts will generally examine all the documentation related to the transaction to determine whether or not a security agreement exists. The courts have denominated this analysis as the "Composite Document Rule." *Id.* Under this rule, the courts will examine all the documents related to the transaction when none of the documents submitted, "standing alone, satisfy the requirements of a security agreement." *Id.* The purpose of the Composite Document Rule is not to establish the existence of a security agreement when the documents failed to comply with the essential requirements to create a security interest, nor to correct any deficiencies in a

security agreement. When examining the documentation under the Composite Document Rule, Judge Hillman emphasizes that:

> [T]he collection of documents must provide data when read together, fully comply with the [section 9–203] requisites for an enforceable security agreement, and it has been held that internal cross-references are essential. This principle cannot be used to expand or correct deficiencies in the collateral description in an existing security agreement.

*Id.* at page 4–10.

 In sum, a sales contract *per se* does not create a security interest unless it contains specific language setting forth the intent of the parties to create a security interest. *See* 19 L.P.R.A. §§ 2053(1), 2151, 2152(1) and 2203(2). The court may consider other documents related to the sales transaction to make a determination on whether the parties intended to create a security interest. If the court finds that the security interest is not validly perfected under the Commercial Transactions Act, then it is unenforceable against the debtor, third parties and creditors as a secured transaction. *See Arctic Air, Inc., supra,* and *Woonsocket, supra.*

B. *The July 2, 2000 Installment Sales Contract: a perfected security interest?*

In the instant case, the debtor and Mueblerías Berríos executed an installment sales contract for consumer goods on July 2, 2000. The contract form used by Mueblerías Berríos is the form used under the Retail Installment Sales and Financing Companies Act, 10 L.P.R.A. §§ 731 *et seq.* [2] The record shows that the install-

---

**2.** The Conditional Sales Act, Act No. 61 of April 13, 1916, 10 L.P.R.A. §§ 31–41, which governed the conditional sales of consumer goods in Puerto Rico, was superseded by the Commercial Transactions Act, which governs how to secure or create a lien in consumer

ment sales contract was filed with the Registry of Commercial Transactions on July 28, 2000.

■ Upon the enactment of the Commercial Transactions Act, a sales contract of consumer goods is considered as a secured transaction only if the contract contains language evidencing the intent of the parties to create a security interest, and the transaction complies with the above cited requirements of a perfected security interest. These are:

(1) the debtor has signed a security agreement (an agreement that creates or provides for a security interest), which includes a description of the collateral (consumer goods) [19 L.P.R.A. § 2053(1)(a)]; and

(2) the agreement states the value of the collateral [19 L.P.R.A. § 2053(1)(b)]; and

(3) the agreement specifies the debtor's rights in the collateral [19 L.P.R.A. § 2053(1)(c)]; and

(4) includes a notice of default to the debtor [19 L.P.R.A. § 2203(2)]; and, lastly,

(5) the filing of a financing statement or an authenticated security agreement provided the security agreement contains the same information as a financing statement [19 L.P.R.A §§ 2102, 2103(1) and 2152].

■ The installment sales contract meets some of the mandatory requirements of Sections 2053(1), 2102, 2103(1) and 2152 of Title 19 L.P.R.A., to wit, the name and address of both the debtor and Mueblerías Berríos; the description of the consumer goods; the value of the goods; and, it is signed by the debtor and Mueblerías Berríos. However, it fails to meet four of the mandatory requirements to create a perfected security interest, name-

ly: (a) the debtor's rights in the collateral, as provided by Section 2053(1)(c); (b) a notice to the debtor in the event of default, as provided by Section 2203(2); (c) the intention of the parties to create a security interest, as provided by Sections 2053(1)(a) and 2152(1); and, (d) the filing of a financing statement or an authenticated security agreement (if filed as a financing statement), with the Registry of Commercial Transactions, pursuant to Sections 2102 and 2152.

■ A sales contract is not a security agreement if it fails to include debtor's grant of a security interest in the collateral. Mueblerías Berríos claims to hold a security merely because the sales contract was filed with the Registry of Commercial Transactions. The mere filing of a sales contract with the Registry of Commercial Transactions does not create a security interest, and does not qualify as a security agreement absent any language to that effect. The installment sales contract is devoid of any language that evidences the intent of the parties to create a security interest on behalf of Mueblerías Berríos.

■ In the instant case, the evidence submitted jointly by the parties shows that the only document filed by Mueblerías Berríos with the Registry of Commercial Transactions is the July 2, 2000 Installment Sales Contract. As of this date, Mueblerías Berríos has not submitted any additional documents with this court to evidence debtor's intent to grant Mueblerías Berríos a security interest in the debtor's goods. *See Arctic Air, Inc., supra.* The filing of a sales contract that does not create a security interest does not "qualify as evidence of a security agreement for purposes of creating a validly perfected security interest." *In re Arctic Air, Inc.,*

goods by perfecting a security interest as pro- vided by 19 L.P.R.A. § 2103(1).

202 B.R. at 535. *See also* 19 L.P.R.A. §§ 2103(1) and 2152(1).

### *Conclusion*

For the reasons stated above, the court finds that Mueblerías Berríos failed to establish that the July 2, 2000 Installment Sales Contract is a duly perfected security agreement as it fails to comply with the mandatory requirements to create a security interest provided in Sections 2053(1), 2102, 2103(1), 2151, 2152(1) and 2203(2) of the Commercial Transactions Act. Strict compliance with these requirements must be observed to create a perfected security interest enforceable against the debtor.

In view of the foregoing, debtor's objection to Mueblerías Berríos' secured claim is hereby granted. Mueblerías Berríos' claim is allowed as a general unsecured claim.

SO ORDERED.