295 B.R. 158 (2003)
Francisco J. ESTEVES ORTIZ, Debtor.
Empresas Berrios D/B/A Mueblerias Berrios, Appellant,
v.
Francisco J. Esteves Ortiz, Appellee.
BAP No. PR 02-051, Bankruptcy No. 01-08533-ESL.
United States Bankruptcy Appellate Panel of the First Circuit.
July 8, 2003.
*159 Brenda Quiñones-Bayrón, Cidra, PR, on brief for the Appellant.
Teresa M. Lube Capo, Lube & Soto Law Offices, P.S.C., San Juan, PR, on brief for the Appellee.
VOTOLATO, FEENEY, and DEASY, U.S. Bankruptcy Appellate Panel Judges.
DEASY, Bankruptcy Judge.
Empresas Berrios d/b/a Mueblerias Berrios (the "Creditor") appeals the order of the bankruptcy court dated July 17, 2002 (the "Order") in which the Court sustained the objection of Francisco J. Esteves Ortiz (the "Debtor") to the Creditor's proof of claim insofar as it asserts status as a secured creditor. For the reasons discussed below, the order of the bankruptcy court is affirmed.
I. Jurisdiction and Standard of Review
An order on an objection to claim is a final appealable order. See Neal Mitchell Assoc. v. Braunstein (In re Lambeth Corp.), 227 B.R. 1, 6 (1st Cir. BAP 1998) (citations omitted); see also In re Saco Local Dev. Corp., 711 F.2d 441 (1st Cir.1983) (discussing bankruptcy appellate panel jurisdiction).
The Bankruptcy Appellate Panel (the "Panel") has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1) and (b). In determining the merits of an appeal, a bankruptcy court's conclusions of law are reviewed de novo. See, e.g., Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir.1998); Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir.1997).
II. Background
The material facts are not in dispute. On July 2, 2000, the Debtor purchased certain home furnishings and appliances for personal, family or household use ("Consumer Goods") from the Creditor. At the time of the purchase the parties executed an installment sales contract (the "Contract") which the Creditor filed with the Registry of Commercial Transactions at the Office of the Secretary of State of *160 the Commonwealth of Puerto Rico. On August 1, 2001, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. On August 15, 2001, the Creditor filed a proof of claim asserting a secured claim in the amount of $2,845.06, together with an objection to confirmation of the Debtor's Chapter 13 plan on the grounds that the plan did not provide for payment of its secured claim and that it failed to provide adequate protection. In response, the Debtor objected to the Creditor's claim of secured status on the basis that the Contract did not create a valid perfected security interest in the Consumer Goods under applicable Puerto Rico law. A pre-trial conference was held on February 1, 2002, and because there was no factual dispute the issue was submitted to the bankruptcy court on a stipulated record and briefs of the parties. The evidentiary record consisted of a copy of the Contract in Spanish, a copy of the official translation of the form of the Contract registered with the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico and a copy of the proof of claim filed by the Creditor. On July 17, 2002, the bankruptcy court issued the Order sustaining the Debtor's objection to the secured status of the Creditor's claim, on the ground that the Contract failed to create a security interest under applicable law of the Commonwealth of Puerto Rico.
III. Discussion
The sole issue in this appeal is whether the Contract, and the recording of the Contract, created a valid perfected security interest in the Consumer Goods purchased by the Debtor. Puerto Rico's version of Article 9 of the Uniform Commercial Code is contained in the Code of Commerce, Chapter 55 of Title 19 of the Laws of Puerto Rico (the "Commercial Transactions Act"). 19 P.R. Laws Ann. § 2001-2207. The resolution of this appeal involves interpretation of the term "security agreement" employed in the Commercial Transactions Act. See 19 P.R. Laws Ann. § 2053(1)(a).
A. Historical Background
In order to analyze the Commercial Transactions Act, it is necessary to briefly examine the history and current status of commercial law in the Commonwealth of Puerto Rico. The Uniform Commercial Code, which has been adopted in the fifty states of the United States, does not apply generally in Puerto Rico. See Ennio M. Colon Garcia et al., Puerto Rico: A Mixed Legal System  MERCANTILE LAW, 32 Rev. Jur. U.I.P.R. 274 (1998) (citing Acevedo v. Citibank, 115 D.P.R. 768, 769 (1984)). Prior to 1996, the primary source of commercial law in Puerto Rico was the Code of Commerce, which was initially adopted in 1829 from the first commercial code of Spain and was amended in 1855 and 1885. Id. The Code of Commerce was "left in force upon arrival of United States forces in Puerto Rico" and was revised again in 1932. Id.
Prior to 1996, the Conditional Sales Act[1] and the Retail Installment Sales Act[2] regulated consumer credit transactions that created a lien in favor of the creditor as security for an installment loan made to the consumer buyer. In 1996, due to the presence of large financial institutions from the continental United States doing business in Puerto Rico, the Commonwealth adopted several sections of Article 9 of the Uniform Commercial Code in the *161 Commercial Transactions Act.[3] The Commercial Transactions Act repealed the Conditional Sales Act.[4] However, the adoption of portions of Article 9 of the Uniform Commercial Code has not negated the influence of prior civil law.
Retaining civil law influence has been due partly to the hierarchical order . . . which laws in Puerto Rico have. At the top level are the special mercantile laws. The next level that follows special mercantile laws is the Code of Commerce which is a general law. The Code of Commerce is applicable when there is no conflict of laws and when the controversy is not included in the special laws. In the absence of an applicable law, then the uses of commerce are observed.
32 Rev. Jur. U.I.P.R. at 277. Likewise, the Code of Commerce provides:
Commercial transactions, be they consummated by merchants or not, whether they are specified in this Code or not shall be governed by the provisions contained in the same; in the absence of such provisions, by the commercial customs generally observed in each place; and in the absence of both, by those of the common law.
10 P.R. Laws Ann. § 1002. Accordingly, subject to certain exceptions which are not relevant to this case, the provisions of the Commercial Transactions Act apply to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods." 19 P.R. Laws Ann. § 2002(1)(a).
A security interest is enforceable against a debtor and third parties only if (1) the debtor has signed a security agreement which (2) contains a description of the collateral, (3) value has been given and (4) the debtor has rights in the collateral. 19 P.R. Laws Ann. § 2053(1). In this case it is undisputed that all of these requirements have been satisfied if the Contract constituted a "security agreement" within the meaning of the Commercial Transactions Act.
Virtually all of the states adopting the Uniform Commercial Code define a "security agreement" as "an agreement which creates or provides for a security interest." Cf. Mass. Gen. Laws. Ann. ch. 106, § 9-102(73) (2001); N.H.Rev.Stat. Ann. § 382-A:9-102(73) (2001). However, the definition of "security agreement" was not included in the Commercial Transactions Act, even though the term is used throughout the Act. See 19 P.R. Laws Ann. §§ 2005, 2051 and 2053(1)(a). The Panel has been unable to determine if this omission was intentional or inadvertent. However, the Panel is not aware of, and the parties have not cited, any provision of the Civil Code of Puerto Rico that would define in any way the term "security agreement."
The Commercial Transactions Act provides that "[e]xcept as otherwise provided in § 2004 of this title on excluded transactions, §§ 2001-2207 of this title apply . . . [t]o any transaction (regardless of form) which is intended to create a security interest in personal property. . . ." 19 P.R. Laws Ann. § 2002(2)(a). Puerto Rico law further provides that the provisions of the Code of Commerce are to be liberally construed and applied to promote the underlying purposes of modernizing the law of *162 commercial transactions, permit the continued expansion of commercial practices and to make uniform the law among the various jurisdictions. 19 P.R. Laws Ann. § 401, made applicable to the Commercial Transactions Act by 19 P.R. Laws Ann. § 2005(4).
The Panel finds that the omission of the definition of "security agreement" from the text of the Commercial Transactions Act is not material to this appeal because the silence of the legislature is cured by its express direction to interpret the Commercial Transactions Act liberally to modernize the law of commerce and make the law uniform among the various jurisdictions. The Puerto Rico Legislature recognized in its Statement of Motives for the Commercial Transactions Act the economic integration of the Puerto Rico financial industry with its United States counterpart, and intended that the Commercial Transactions Act place Puerto Rico commercial law on par with the world markets in general and in particular with comparable uniform legislation of the United States.[5] Following the directive of the Puerto Rico legislature, this Panel shall interpret the term "security agreement" in a manner consistent with other jurisdictions in the continental United States which have adopted the Uniform Commercial Code, if that interpretation does not conflict with other applicable provisions of Puerto Rico law.
B. Enforceable Security Interests under the Commercial Transactions Act
The passage of the Commercial Transactions Act has fundamentally changed Puerto Rican law governing installment sales of goods in consumer transactions. Under prior law (the Conditional Sales Act) a seller retained title to the goods sold until the buyer had completed payment. Carina Mercury, Inc. v. Igaravides, 344 F.2d 397, 400 (1st Cir.1965). However, a reservation of title, accompanied by delivery of the goods to a buyer, was void as against subsequent purchasers, pledgees or mortgagees in good faith, and other third parties, unless the contract was filed in accordance with the terms of the Conditional Sales Act. Id.; In re Sigo Corp., 336 F.Supp. 402, 404 (D.P.R.1971).
Under the Commercial Transactions Act the Debtor must have signed a security agreement if the Creditor is to have a valid perfected security interest in the goods. A valid security agreement cannot exist until the parties to the transaction have agreed to create or grant a security interest in favor of the creditor. See William C. Hillman, Documenting Secured Transactions, chapter 4 (19th ed.1999). The sine qua non of a security agreement is a document that shows, "to an objective observer, that the debtor intended to transfer an interest in personal property as security to a creditor." White & Summers, Uniform Commercial Code, Sec. 31-3(a) (5th ed.2002) (emphasis in the original). Although the agreement between the parties need not follow any particular form, it must indicate an intent to create a security interest. Id. Documents which standing alone describe a loan or describe collateral or may even have been recorded are not sufficient to create a security interest. In re Bollinger Corp., 614 F.2d 924, 927 (3d Cir.1980) (finding a promissory note standing alone is not sufficient to act as a security agreement); In re Numeric Corp., 485 F.2d 1328, 1331-32 (1st Cir.1973) (holding a financing statement alone does not establish that in fact a security agreement has been agreed upon); In re Arctic Air, Inc., 202 B.R. 533 (Bankr.D.R.I.1996) (financing statement with a list of collateral and invoices for goods sold and delivered not sufficient to *163 act as a security agreement); In re John Oliver Co., 129 B.R. 1, 2-3 (Bankr.D.N.H.1991) (financing statement containing language "to cover my interests" not sufficient to create a security interest); Bossingham v. Bloomington Prod. Credit Ass'n (In re Bossingham), 49 B.R. 345, 349 (S.D.Iowa 1985) (financing statement not sufficient to create a security interest in the absence of language which objectively indicates such an intent), aff'd, 794 F.2d 681 (8th Cir.1986).
It is not necessary that the parties sign a separate document labeled as a security agreement. So long as several documents collectively indicate an intent to create a security interest, they may together satisfy the requirements necessary for an enforceable security agreement. In re Bollinger, 614 F.2d at 929 (finding a promissory note, financing statement, series of letters and the course of dealing between the parties sufficient evidence of an intent to create a security interest); In re Numeric Corp., 485 F.2d at 1332 (financing statement and board of director's resolution, taken together, constitute a security agreement); In re Bossingham, 49 B.R. at 349 (financing statement and handwritten agreement, when read together, satisfy the objective test with respect to showing an intention of the parties to create a security interest).
In this appeal, it is undisputed that the transaction in question involved the extension of credit in connection with the purchase of consumer goods. Under the Commercial Transactions Act, unlike the Conditional Sales Act, it is not necessary for the Creditor to record a financing statement in order to perfect a purchase money security interest in collateral consisting of consumer goods. See 19 P.R. Laws Ann. § 2007 (defining purchase money security interest), § 2009 (defining consumer goods), § 2102(1)(d) (listing exceptions to the filing requirement).
C. The Creditor's Position
Against the backdrop of the legal history of the Commercial Transactions Act in Puerto Rico and decisions under the Uniform Commercial Code in the fifty states that have adopted it, the Creditor advances four arguments in support of its position that its claim is secured by a valid perfected security interest.

1. The Retail Installment Sales Act
The Creditor's first argument is that the enactment of the Commercial Transactions Act did not supersede, alter or amend the Retail Installment Sales Act, Chapter 36 of Title 10 of the Laws of Puerto Rico. See 19 P.R. Laws Ann. §§ 731, et seq. The Creditor contends that the Retail Installment Sales Act continues to control the form and content of conditional sales contracts in Puerto Rico. The Creditor supports this argument by directing the Panel to the provisions of the Commercial Transactions Act which provide that although a transaction is subject to the Commercial Transactions Act, it is also subject to the Retail Installment Sales Act, and any similar consumer legislation, and that in case of conflict between the provisions of the Commercial Transactions Act and any such statute, the provisions of such statute control. 19 P.R. Laws Ann. § 2053(4).
The Creditor's argument is not persuasive. The Retail Installment Sales Act does not contain any provisions regarding the form or content of security agreements or the creation of security interests. The Retail Installment Sales Act does mandate certain content identifying the parties, the sales price, the identification of the goods or services sold and the details of the credit portion of the transaction. See 10 P.R. Laws Ann. § 742. However, nothing in the Retail Installment Sales Act prescribes any form or content regarding the creation of a security interest. Accordingly, the Panel finds nothing in the Retail *164 Installment Sales Act that conflicts with the Commercial Transactions Act.[6]

2. Creation of a Security Interest Under The Commercial Transactions Act
The Creditor correctly states that there is no magic language required to constitute a security agreement. "A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, [satisfies] the formal requirements of the statute and the policies behind it." In re Numeric Corp., 485 F.2d at 1331 (emphasis added) (citations omitted). The Creditor also correctly notes that a security interest is not enforceable unless it has attached and that the requirements for attachment are set forth in the Commercial Transactions Act. See 19 P.R. Laws Ann. § 2053(1).
The Creditor contends that all of the requirements for a valid perfected (i.e. enforceable) security interest were satisfied in its transaction with the Debtor. Specifically, the Creditor maintains that the Debtor signed a security agreement containing a description of the collateral, value had been given and the Debtor had rights in the collateral. See 19 P.R. Laws Ann. § 2053. The Debtor does not dispute that value had been given or that the Debtor had rights in the collateral. The only question before the bankruptcy court, and in this appeal, is whether the sole document in the stipulated evidentiary record signed by the Debtor, the installment sales contract, constitutes a security agreement.
The Contract is a single piece of paper with provisions on both sides. The front side of the Contract identifies the Debtor, lists his name and address, contains a description of the goods purchased and certain consumer credit transactional information required by the Retail Installment sales Act and federal truth in lending law.[7] Immediately above the description of goods on the front side of the Contract are the words "By signing this contract the BUYER acquires from the SELLER subject to the terms set forth in this agreement the following goods." The balance of the front side of the Contract contains a detailed description of the goods "acquired" by the Debtor from the Creditor and financial disclosures regarding the credit terms of the purchase. Below the disclosure of credit terms and above the Debtor's signature, in bold type, are the words "Note: the terms and conditions on the back of this document are integral [sic] part of this installment sale."
The back side of the Contract contains five numbered sections, a disclosure of the Creditor's right to late charges and attorney fees, a form for assignment of the installment sales contract and an acknowledgment by the buyer that an exact copy of the contract was tendered to him or her on or before the sale date. Of the five numbered paragraphs two deal with the credit portion of the transaction (paragraphs 1 and 4), two deal with buyers obligations with respect to the goods purchased (paragraphs 2 and 3) and one deals with the contract itself (paragraph 5). It is the last paragraph which is most pertinent to this appeal. Paragraph 5 on the back side of the Contract provides:
5. The parties acknowledges [sic] that this is the only written document containing *165 all the terms and conditions for the sale of goods herein described, and that there are no other agreements either written or oral between the parties with respect to such goods.
This paragraph, in effect, integrates into the one document all of the discussions and agreements between the parties to the Contract. Accordingly, under the express terms of the contract and the stipulation between the parties, any intention to create a security interest must be found within the four corners of the Contract, or not at all.[8]
The language in the Contract merely reflects an agreement that the Creditor is extending consumer credit to the Debtor and the Debtor is purchasing from the Creditor certain consumer goods identified in the Contract. There is no express language in the Contract creating or granting a security interest or reserving title to the Creditor until the balance of the purchase price is paid. The Creditor has been unable to point to any language in the Contract which evidences a consensual agreement between the parties to create or provide for a security interest. The absence of any evidence of such an intent by the parties alone is sufficient to sustain the ruling by the bankruptcy court. As no security interest was created under the provisions of the Commercial Transactions Act, the attachment necessary to result in an enforceable security interest did not occur. 19 P.R. Laws Ann. § 2053.

3. Lack of Notice of Repossession Rights Under the Commercial Transactions Act
In general, a secured creditor has the right upon default to take possession of the collateral. 19 P.R. Laws Ann. § 2203. However, in a consumer credit transaction a notice of the right to take possession must be given in the space immediately preceding the signature of a consumer debtor. 19 P.R. Laws Ann. § 2203(2). The Contract does not contain this required notice. The bankruptcy court held that such a provision was a mandatory element of a security agreement in a consumer transaction. The Creditor argues that this holding was erroneous because the Commercial Transactions Act permits a secured creditor in a consumer transaction to waive the remedy of repossession without resort to judicial process. The Panel notes that in view of the integration clause in paragraph 5 on the reverse side of the Contract and the absence of any language waiving any available remedies elsewhere in the Contract, the Creditor's contention is without merit. The Panel also questions why a secured creditor in a consumer transaction would knowingly waive the right to repossess collateral in the event of default. However, since no security interest was created by the Contract, the Panel need not decide the legal effect of the omission of the notice required under 19 P.R. Laws Ann. § 2203(2).

4. Filing Not Required Under the Commercial Transactions Act
The Creditor argues that the bankruptcy court erred when it held that the filing of a proper financing statement was required to perfect any security interest the parties intended to create in favor of the Creditor. The Panel does not agree with the Creditor that the bankruptcy court held that filing was required. Rather, it appears that the bankruptcy court merely pointed out that an installment sales contract *166 was not a security agreement if it failed to create a security interest, and that recording of such a defective contract could not cure such a defect. It is clear that if a valid purchase money security interest had been created in this consumer credit transaction, filing would not have been necessary for perfection. See 19 P.R. Laws Ann. § 2102(1)(d). Accordingly, even if the Creditor's characterization of the bankruptcy court's holding is correct, any error was harmless because no security interest was created between the parties. See, e.g., United States v. Rosales, 19 F.3d 763, 766 (1st Cir.1994); United States v. Ladd, 885 F.2d 954, 957 (1st Cir.1989).
IV. Conclusion
For the reasons set forth above the Panel finds that the bankruptcy court did not err when it found that the Contract was not a security agreement within the meaning of the Commercial Transactions Act. Accordingly, the Order is AFFIRMED.
NOTES
[1] Act No. 61 of April 13, 1916; 10 P.R. Laws Ann. §§ 31-41.
[2] Act No. 68 of June 19, 1964, as amended; 10 P.R. Laws Ann. §§ 731, et seq.
[3] Act 208 of August 17, 1995, as amended by Act No. 241 of September 19, 1996; 19 P.R. Laws Ann. §§ 2001-2207. Puerto Rico has not adopted the Uniform Commercial Code in its entirety. The Commercial Transactions Act adopted only portions of Articles 5, 7, 8 and 9 of the Uniform Commercial Code. The Commercial Transactions Act became effective January 1, 1998.
[4] Act 241 of September 19, 1996, § 17.
[5] Act 241 of September 19, 1996.
[6] In fact, the Retail Installment Sales Act may arguably require that the creation of the security interest be contained within the same document as the retail sales installment contract itself. See 10 P.R. Laws Ann. § 741.
[7] The bankruptcy court did not consider whether the Contract was in compliance with the Retail Installment Sales Act or federal truth in lending laws, and that issue was not raised by the parties or considered by the Panel in this appeal.
[8] It appears that the substance of paragraph 5 is required under the terms of the Retail Installment Sales Act, 10 P.R. Laws Ann. § 741(1). Accordingly, it may not be possible in a consumer credit transaction governed by Puerto Rico law to find an intention by the parties to create a security interest by looking to multiple documents. In any event, the parties to this appeal are not making any such argument.